769 So.2d 1235 (2000)
STATE of Louisiana
v.
Arthur J. WASHINGTON.
No. 00-KA-301.
Court of Appeal of Louisiana, Fifth Circuit.
September 26, 2000.
*1236 J. Rodney Baum, Louisiana Appellate Project, Baton Rouge, Louisiana, Attorney for Appellant Arthur J. Washington.
Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Counsel of Record on Appeal, Terry M. Boudreaux, Assistant District Attorneys, Appellate Counsel, George C. Wallace, Trial Attorney Assistant District Attorney, Gretna, Louisiana, Attorneys for Appellee State of Louisiana.
Panel composed of Judges CHARLES GRISBAUM, Jr. and JAMES L. CANNELLA, and JAMES C. GULOTTA, Judge Pro Tem.
CANNELLA, Judge.
Defendant, Arthur Washington, appeals from his conviction of theft, valued between $100 and $500, his adjudication as a third felony offender and sentence to life in prison at hard labor. For the reasons which follow, we affirm the conviction and adjudication as a third felony offender, but vacate the sentence and remand for resentencing.
This case involves a theft at Walgreens drugstore on Lafayette Street in Gretna on January 24, 1998. At approximately 5:30 p.m., Sharon Stockman (Stockman), Walgreens' assistant manager, walked from the store's office when she heard the alarm sound. She saw a young girl and a man exiting the store. Stockman did not think that the girl was responsible for setting off the alarm. She called to the man to re-enter the store, but he turned, looked her way and continued on his way. The man, who was subsequently identified as the Defendant, was carrying a duffel bag as he left the store. Suspecting shop-lifting, Stockman telephoned the police. Officer Brian Clark of the Gretna Police *1237 Department was on patrol in the area and responded to the call. He drove along Newton Street towards its intersection with Twenty-First Street, which leads into an alley near Walgreens. Immediately after receiving the call, Officer Clark saw the Defendant, who matched the description of the suspected Walgreens shoplifter, emerge from the alley. Officer Clark testified that he approached the Defendant and placed him against his patrol unit, where he conducted a field interview. Officer Clark then noticed that the Defendant's duffel bag was unzipped and he saw cologne packages bearing Walgreens tags inside the bag. The officer then placed the Defendant under arrest.[1]
Officer Clark brought the Defendant to Walgreens where Stockman positively identified him as the man who left the store as the alarm sounded. Merchandise in the Defendant's bag included three boxes of Polo cologne, three boxes of Stetson Sierra cologne, one bottle of Michael Jordan cologne, and one bottle of ladies' perfume. The merchandise was valued at approximately $190.
The Jefferson Parish District Attorney charged the Defendant by bill of information with committing theft of goods valued between $100 and $500. At arraignment, the Defendant pled not guilty. The matter proceeded to trial before a six-person jury, which returned a verdict of guilty as charged on June 3, 1998.
Subsequently, the State filed a habitual offender bill of information that alleged that the Defendant was a third felony offender. After a hearing on August 21, 1998, the trial judge found the Defendant to be a third felony offender. The trial judge sentenced the Defendant to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. It is from this conviction and sentence that Defendant now appeals. On appeal, Defendant assigns three errors.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error, the Defendant argues that the trial court erred by proceeding to trial after denying his motion for appointment of a sanity commission without ascertaining his mental capacity to proceed.
The State responds that the trial judge did not abuse his discretion in denying the Defendant's motion because the Defendant did not meet his burden of proof of showing reasonable grounds to doubt the Defendant's mental capacity.
On the day of trial, defense counsel orally requested that the trial court appoint a sanity commission to determine the Defendant's present mental capacity. Defense counsel argued that the sanity commission was warranted because of certain responses on the intake booking sheet. According to defense counsel, question five on the sheet asked whether the inmate "[a]ppears despondent, down or depressed, or irrational, crazy, hearing voices or reacting strangely." The word "yes" was checked next to this question. Which of those conditions were apparent was not specified. Additionally, defense counsel told the trial court that the booking sheet indicated the Defendant had refused to sign. Finally, defense counsel asserted that the Defendant recently indicated that he had taken the medications Elavil and Thorazine when he was previously incarcerated in the parishes of East Baton Rouge and Orleans, and that he was currently taking Sinequan.
The following exchange took place between the trial court and defense counsel:

THE COURT:
Well you're the third attorney that has gotten into this case and it just amazes me that on the day of trial when the jury is waiting in the hall that a request for a sanity commission *1238 is being made. It just shocks me that it took three lawyers to finally reach that decision on the day of trial.
. . .
MR. NOLTING (defense counsel):
Well, Your Honor, I believe that this is the first time I discussed the matter or tired to discuss the matter with my client. He didn't cooperate, because he said he had an attorney. And I believe he's put on the record that he didn't even want me as an attorney. So, cooperation from him has beenI thought it was strange and now it makes a little more sense that he acted so strangely. I apologize for not having this information.

THE COURT:
Well, okay, I'm gong to deny your request.
According to La.C.Cr.P. art. 641, "[m]ental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense." A defendant's mental incapacity to proceed may be raised by the defense, the district attorney, or the court at any time. La. C.Cr.P. art. 642; State v. Clark, 367 So.2d 311, 313 (La.1979); State v. Payne, 586 So.2d 652, 654 (La.App. 5th Cir.1991).
The law presumes a defendant's sanity. La. R.S. 15:432; State v. Bibb, 626 So.2d 913, 927 (La.App. 5th Cir.1993), writ denied, 93-3127 (La.9/16/94), 642 So.2d 188. A defendant has the burden of proving by a preponderance of the evidence that, as a result of a mental disease or defect, he lacks the capacity to understand the proceedings against him or to assist in his defense. State v. Brooks, 541 So.2d 801, 805 (La.1989); State v. Bibb, supra. The trial court is required to order a mental examination of the defendant only when it has reasonable grounds to doubt the defendant's mental capacity to proceed. La.C.Cr.P. art. 643; State v. Bibb, at 928. The ordering of a sanity commission rests in the sound discretion of the trial court. State v. Fish, 99-1280 (La.App. 5th Cir. 4/12/00), 759 So.2d 937. Furthermore, when the issue of a defendant's incapacity to proceed is presented by "bare allegations without supporting evidence, the exercise of discretion conferred on the trial judge will not be disturbed." State v. Wilkerson, 403 So.2d 652, 658 (La.1981).
In this case, defense counsel presented no evidence of the Defendant's inability to proceed except the answer to question five on the booking sheet and the information that the Defendant had previously, while in prison, taken Elavil and Thorazine. It should be noted, however, that the booking sheet also had an affirmative response to the question of whether the Defendant "appear[ed] under the influence of drugs or alcohol (confused, staggering, slurred speech, unconscious)". Thus, the affirmative response to question five could have been a reference to Defendant's intoxicated state and not necessarily an indication of his lack of sanity.
Louisiana courts have affirmed the denial of a motion for a sanity commission under similar circumstances when the motion is unsubstantiated. In State v. Wilkerson, supra, the motion contained allegations that the Defendant was confused, depressed, and had no recollection of the charged offense, that the defendant had suffered severe blows to the head in the past two years and that the defendant had been sent to the state's mental hospital on a prior occasion. Finally, the motion alleged that the defendant's mental condition prevented him from understanding the proceedings against him and from assisting counsel in his defense. Id. at 658. The Louisiana Supreme Court noted that the defendant did not request a hearing on the motion, nor did he present any evidence in support of the allegations therein. The Court held that the trial judge had not abused his discretion in denying the defendant's motion, since the defendant had not met his burden of proof and "did not attempt to do so by means other than unsubstantiated *1239 allegations in his motion." Id. at 658.
Here, the Defendant did not present any medical or testimonial evidence in support of his motion, nor did he request a hearing on the motion. Rather, defense counsel relied on the intake booking sheet and assertions from the Defendant regarding the medications he had taken, and was taking at that time. While the Defendant did not testify at trial or at the hearing, the record reflects that the Defendant conversed intelligently with the trial court and defense counsel at a pretrial hearing on April 13, 1998, as well as when the Defendant informed the trial court that he was not going to testify and wished to assert his right against self-incrimination.
Accordingly we find, based on the record before us, that the trial court did not abuse his discretion in denying the defense motion to appoint a sanity commission. Defense counsel did not meet his burden of proof of calling defendant's ability to proceed into question. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
By this assignment of error, the Defendant argues that there was insufficient evidence to prove beyond a reasonable doubt that he committed the crime of felony theft. The Defendant contends that the evidence was legally insufficient because the State failed to prove that he was the perpetrator.
The State responds that the evidence clearly supports a finding of the Defendant's guilt beyond a reasonable doubt through the testimony of its witnesses.
The appropriate standard for determining the sufficiency of the evidence was established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). According to Jackson, the reviewing court must decide, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See also, State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291, 1292-1293; State v. Holmes, 98-490 (La.App. 5th Cir. 3/10/99), 735 So.2d 687, 690. The state is also required to negate any reasonable probability of misidentification in order to meet its burden of proof. State v. Newman, 99-841 (La.App. 5th Cir. 12/15/99), 750 So.2d 252, 258.
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 provides that "assuming every fact to be proved that the [circumstantial] evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." State v. Captville, 448 So.2d 676, 678 (La. 1984); State v. Wooten, 99-181 (La.App. 5th Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208. This is not a separate test from the Jackson standard, but rather provides a helpful basis for determining the existence of reasonable doubt. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Wooten.
The Defendant was charged with and convicted of theft of goods valued between $100 and $500, which provides in pertinent part:
La. R.S. 14:67.10
A. Theft of goods is the misappropriation or taking of anything of value which is held for sale by a merchant, either without the consent of the merchant to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the merchant permanently of whatever may be the subject of the misappropriation or taking is essential and may be inferred when a person:
(1) Intentionally conceals, on his person or otherwise, goods held for sale.
To prove its case, the State presented the testimony of Stockman and Officer *1240 Clark. Stockman testified that she saw the Defendant exit the store with a duffel bag as the store's alarm sounded. She explained that the "alarm tags" are placed on Walgreens' merchandise and are deactivated at the cashier's counter when a customer pays for merchandise. So, she explained that the store's alarm will sound when a customer exits the store without paying for the goods.
Stockman acknowledged that she did not see the Defendant take any of the merchandise prior to the alarm sounding and she admitted that a young girl walked out of the store simultaneously with the Defendant. However, she stated that she did not think that the girl had set off the alarm because it appeared that the child had "nothing on her but a candy," while the Defendant was carrying a large duffel bag.
The evidence also established that the Defendant was apprehended near the store with a duffel bag containing Walgreens' merchandise and that Stockman identified the Defendant as the person she saw leaving the store when the alarm sounded. Stockman testified that the Defendant was brought back to the store by the police within "five minutes at the most." Officer Clark testified that the alley where he apprehended the Defendant was about 50 to 60 yards away from Walgreens.
Moreover, Stockman testified at trial that she was positive that the Defendant was the man who had walked out of the store when the alarm sounded and she identified the Defendant in court as the perpetrator.
Despite the foregoing testimony, the Defendant urges that the State failed to negate the probability of misidentification because the Defendant was wearing different clothes than those described by Stockman when he was returned to the store. Stockman testified that she told the police that the man who walked out of Walgreens was wearing a black and white striped shirt over another shirt and dark pants. A photograph of the Defendant taken shortly after the offense depicts the defendant wearing white pants. When defense counsel drew Stockman's attention to this discrepancy, she admitted that some of the clothing was different from what she had described, but remained positive in her identification of the Defendant. However, it is noted that dark colored pants were depicted in the photograph showing the contents of the Defendant's duffel bag.
Defendant next contends that he could not have taken the cologne because, based on Stockman's testimony, the cologne found in the defendant's possession was kept behind the cosmetics counter and behind locked doors secured by an alarm, which had not sounded. Contradicting this, however, Officer Clark testified that he had been in Walgreens several times, and had noticed that these particular colognes were not kept behind locked doors. Additionally, the officer testified that Stockman told him that Walgreens had not sold a large quantity of cologne in the previous hour.
Defendant likewise highlights Stockman's testimony that Walgreens has security cameras, but that she did not have a videotape of the Defendant stealing any merchandise. In contrast, Officer Clark testified that, to his knowledge, Walgreens security monitors did not videotape customers. He also stated that Walgreens has never provide a videotape in any of the numerous shoplifting complaints that he has investigated.
In finding the Defendant guilty as charged, the jury was obviously persuaded by Officer Clark's explanations regarding where the cologne was kept and the reason why there was no videotape, and likewise resolved any discrepancies in the testimony in favor of the State. The Louisiana Supreme Court has stated that "[i]t is the role of the fact-finder to weigh the respective credibilities of witnesses, and this court will not second-guess the credibility determinations of the trier of fact beyond *1241 our sufficiency evaluations under the Jackson standard of review." State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983); See also, State v. Lewis, 98-672 (La.App. 5th Cir. 3/10/99), 732 So.2d 556, 560, writ denied, 99-2818 (La.4/20/00), 760 So.2d 334.
Based on the forgoing, we conclude that the evidence supports the finding that a rational trier of fact, in this case the jury, could have found the Defendant guilty beyond a reasonable doubt. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
By this assignment of error, the Defendant argues that his sentence to life in prison at hard labor based on the underlying felony of theft of merchandise valued between $100 and $500 is constitutionally excessive. The Defendant also argues that his counsel was incompetent for failing to file a motion to reconsider sentence.
The State argues that the sentence was the mandatory minimum for the offense, where the Defendant was adjudicated a third felony offender and therefore, was not excessive. Further, since the sentence was mandatory, there was no reason to file a motion to reconsider the sentence, thus, no evident incompetency on the part of defense counsel.
After reviewing the sentencing transcript, we find that an oral motion to reconsider sentence was made, albeit perhaps not as articulately as some. However, it was sufficient for the trial court to understand the complaint and to assure the Defendant that he would have the right and opportunity to appeal his sentence. Therefore, we find any arguments regarding the incompetency of defense counsel on this basis, moot and that the issue of the excessiveness of defendant's sentence is properly before this court on appeal.
In reviewing the sentence on the merits, we find that the sentence should be vacated because it was imposed based on a mistake of law by the trial court, defense counsel and the State. Review of the sentencing transcript indicates that the trial court sentenced the Defendant under the belief that the sentence was mandatory and under the erroneous belief that he could not deviate from the sentence which he imposed.
While a sentencing judge must always start with the presumption that a mandatory minimum sentence is constitutional, a trial court may depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut the presumption of constitutionality. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676. In State v. Dorthey, 623 So.2d 1276 (La.1993) the Louisiana Supreme Court recognized that, if a trial court determined that the minimum sentence mandated by the Habitual Offender Law makes no measurable contribution to acceptable goals of punishment or that the sentence amounts to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime, then the trial judge must reduce the sentence to one that would not be constitutionally excessive. Dorthey, at 1280.[2]
In the instant case, the trial court was acting under the erroneous view that the mandatory minimum sentence could not be deviated from, no pre-sentence investigation was ordered, no sentencing hearing was conducted and no reasons for the imposition of the sentence were articulated. Therefore, we find that the sentence was imposed based on a mistake of law and without consideration of all of the facts. Consequently, it must be set aside. *1242 Therefore, we order the sentence vacated and the case remanded for resentencing in accordance with law. La. R.S. 15:529.1; State v. Johnson, supra; State v. Dorthey, supra.
Accordingly, for the reasons set forth above, we affirm the Defendant's conviction for theft of goods valued between $100 and $500 and his adjudication as a third felony offender, but vacate his sentence and remand for resentencing.
CONVICTION AND ADJUDICATION AS A THIRD FELONY OFFENDER AFFIRMED; SENTENCE VACATED; AND CASE REMANDED.
NOTES
[1] The State introduced into evidence photographs of the unzipped bag, as well as the bag's contents.
[2] See. State v. Neal, 00-41 (La.App. 5th Cir. 5/3/00), 762 So.2d 281, where this court affirmed the trial court finding that a mandatory life sentence for a fourth offender was constitutionally excessive, noting that the crime of theft of merchandise valued at under $300 is now a misdemeanor.