823 So.2d 978 (2002)
STATE of Louisiana
v.
Michael SOPCZAK.
No. 02-KA-235.
Court of Appeal of Louisiana, Fifth Circuit.
June 26, 2002.
Rehearing Denied September 9, 2002.
*979 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Alison Wallis, Assistant District Attorneys, Gretna, LA, for Appellee.
Holli Herrle-Castillo, Marrero, LA, for Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS and SUSAN M. CHEHARDY.
MARION F. EDWARDS, Judge.
Defendant, Michael Sopczak, appeals his conviction on two counts of simple burglary, alleging that he was insane at the time of the offenses. For the reasons to follow we affirm his convictions, but vacate the sentences on the multiple offender proceedings and remand for re-sentencing.
Sopczak was charged with two counts of simple burglary, in violation of LSA-R.S. 14:62, and pled not guilty. The defense filed an Application for Appointment of a Sanity Commission, asserting that Sopczak was not competent to assist counsel at trial, and that he did not understand the consequences of his actions when he committed the charged offenses.
A competency hearing was held on January 7, 1999, at which time the state and the defense agreed to stipulate to the medical reports submitted by Drs. Marguerite Poreda and Jodie Holloway. The trial court found Sopczak competent to stand trial.
On May 3, 1999, Sopczak appeared with a new attorney, and entered a plea of not guilty and not guilty by reason of insanity. The state filed a revised Notice of Intent to Introduce Evidence of Other Crimes. Subsequently Sopczak appeared with yet another attorney, who moved the court to grant a trial continuance so that Sopczak could be evaluated by a Dr. Jackson, waiving any prescription challenges. The continuance was granted. On May 11, 2000, the court granted the state a continuance to allow Sopczak to be examined by Dr. Mark Dean.
After numerous other continuances, Sopczak was tried by a six-member jury on November 14, 15, and 16, 2000 and at the conclusion of trial, the jury found him guilty as charged on both counts. Sopczak was originally sentenced to 12 years at *980 hard labor on each count, with the sentences to run concurrently. A Motion to Reconsider Sentence was filed, and on the same day, Sopczak filed a Motion for Appeal, which motion was granted.
The state filed an habitual offender bill of information alleging Sopczak to be a third felony offender. Sopczak responded with a second Motion for Appointment of a Sanity Commission. A sanity commission was appointed to determine Sopczak's mental capacity to proceed, but on December 19, 2001, Sopczak stipulated to his competency. The prosecutor joined in the stipulation. On that day, Sopczak admitted to the allegations in the habitual offender bill. The court accepted the admission, and found him to be a third felony offender. One of his sentences was vacated, and the court imposed an habitual offender sentence of eight years at hard labor.

FACTS
At trial, Linda Engelhardt testified she is the office manager for her husband, Dr. Gilmer Engelhardt, a dentist whose office is on Shores Drive in Metairie. She stated that although the office had been cleaned and secured prior to the Christmas holiday, when she arrived on the morning of December 26, 1997, she found that every room in the office had been ransacked.
Mrs. Engelhardt testified that files and charts were piled in a large heap on the floor and that everything was wet, as if some liquid had been poured on it. An intruder had apparently entered by breaking a window. Missing from the office were an answering machine, a stereo receiver, some dental supplies, and scrap dental gold. Ms. Engelhardt identified State's Exhibit 7 as a photograph of a partially consumed bottle of liquor located in the office. She stated that the liquor was a Christmas gift, and that it had been left unopened when the office was closed for the holiday. The approximate value of the missing items was between $4,500.00 and $5,000.00. Ms. Engelhardt testified that neither she nor her husband knows Michael Sopczak and that they did not give him permission to enter the dental office.
Sharon Howard testified that she dated Sopczak in 1997, and received a telephone call from him at about 5:30 a.m. on Christmas Day that year, asking her to pick him up. The name Gil Engelhardt, a person whom she does not know, appeared on her caller I.D. device. Sopczak's voice was slurred, and he seemed to her to be intoxicated. When Ms. Howard saw him a week later, he showed her a small plastic bag containing pieces of gold, telling her that a friend had given them to him to repay a debt.
John Tedesco, Sr. testified that he owns a business called J's Pool Maintenance on Belle Drive in Metairie. In the early morning hours of December 26, 1997, Mr. Tedesco and his two sons-in-law rode to his business to retrieve his boat for a planned fishing trip. Mr. Tedesco testified that when he arrived there, he saw that the front door had been torn from its hinges, and seven windows on the front of the building had been broken. The burglar bars on the windows remained intact.
Tedesco entered the building and saw Sopczak sleeping at a desk. The place was in great disarray, and most of the office equipment, including telephones, an answering machine, and a photocopier, were on the front porch. A saw and a sanding machine were not in their proper places. Sopczak had apparently attempted to heat a can of gravy in a microwave oven, causing the can to explode and gravy had been poured or vomited onto the floors. Sopczak had vomited on Mr. Tedesco's desk, ruining business records. A second desk *981 had been ransacked. Tedesco testified that at a later date, a pressure washer was discovered missing from the business. It was never recovered.
Mr. Tedesco telephoned 9-1-1, and Deputy Melissa Dumensil reported to the scene. After interviewing Mr. Tedesco, she awakened Sopczak and placed him under arrest. Dumensil testified that Sopczak smelled strongly of alcohol, and that he stumbled and swayed when she walked him to the police car. Mr. Tedesco and Deputy Dumensil both testified that Sopczak said he did not want to go to jail.
Mr. Tedesco testified that he does not know Sopczak, and did not give him permission to enter his business. Prior to the holiday, Mr. Tedesco left the building's contents in order, and the door locked. He testified that he spent $3,500.00 on cleanup and repairs after the break-in.
Sopczak's mother, Elizabeth Amberg, testified that her son disappeared from a family dinner party at about 11:00 p.m. on Christmas night, 1997. She did not know where he went. She further testified that J's Pool Maintenance is around the corner from the house where she and Sopczak lived together.

ASSIGNMENT OF ERROR
On appeal, Sopczak urges that the evidence was insufficient to support a guilty verdict. He does not dispute that he entered both Dr. Engelhardt's dental office and Mr. Tedesco's business on the days alleged. He argues, however, that the evidence at trial showed he was insane at the time of the offenses, and was therefore not criminally responsible for his actions.
In Louisiana, the law presumes a defendant's sanity.[1] To rebut the presumption of sanity and avoid criminal responsibility, the defendant has the burden under LSA-C.Cr.P. art. 652 of proving the affirmative defense of insanity by a preponderance of the evidence. Criminal responsibility is not negated by the mere existence of a mental disease or defect. To be exempted from criminal responsibility, the defendant must show he suffered a mental disease or defect which prevented him from distinguishing between right and wrong at the time he committed the conduct in question.[2]
The determination of sanity is a factual matter.[3] A Louisiana jury considering an accused's plea of not guilty and not guilty by reason of insanity must first determine whether the state has proven the essential elements of the charged offense beyond a reasonable doubt. It may then proceed to the determination of whether the defendant was incapable of distinguishing between right and wrong at the time of the offense, and is thus exempt from criminal responsibility for his actions.[4] All evidence, including both expert and lay testimony, along with defendant's conduct and actions before and after the crime, may be considered in determining whether the defendant has met his burden of proof. On review of a claim for sufficiency of evidence in an action where an insanity defense has been raised, the appellate court, applying the Jackson[5] *982 standard, must determine whether under the facts and circumstances of the case, any rational fact finder, viewing the evidence in a light most favorable to the prosecution, could conclude, beyond a reasonable doubt, that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the offense.[6]
Sopczak was convicted of two counts of simple burglary, which is defined by LSA-R.S. 14:62 as "the unauthorized entering of any dwelling ... with the intent to commit a felony or any theft therein...." Simple burglary is a specific intent crime.[7]
The testimony of Mrs. Engelhardt established that some unauthorized person broke into her husband's office over the Christmas holiday. Sharon Howard's testimony, that she received a telephone call from Sopczak early on Christmas morning, 1997, originating from a telephone listed to Dr. Engelhardt, was circumstantial evidence that it was Sopczak who entered Dr. Engelhardt's office. Ms. Howard also saw Sopczak with small pieces of gold, one of the items taken in the burglary of the doctor's office.
Mr. Tedesco testified that he found Sopczak inside of his place of business without permission. The condition of the doors and windows of the building indicated forced entry. The state clearly proved unauthorized entry of both buildings, and Sopczak does not dispute those facts.
The state was obliged to prove at trial that Sopczak had the specific intent to commit a theft or some other felony in each of the break-ins. In the case of Dr. Engelhardt's office, Ms. Howard's testimony showed that Sopczak was in possession of the gold taken in the incident, and that he lied to her about the source of the gold, stating that he received it from a friend. From this the jury could have inferred that he was attempting to hide from his girlfriend the fact that he had committed what he knew to be an unlawful act. An answering machine, a stereo receiver, and other office items were also missing. Ms. Engelhardt testified that her husband's office had been ransacked, from which the jury could have inferred that Sopczak purposefully searched the place for valuables.
The state showed, through Mr. Tedesco's testimony, that Sopczak did $3,500.00 worth of damage to his building by breaking seven windows and a door, and generally ransacking the premises. LSA-R.S. 14:56(B) provides that criminal damage to property amounting to more than five hundred dollars is punishable as a felony. Moreover, several pieces of office equipment were piled on the front porch of the business, as if someone were preparing to leave with it. Displacement of the victim's possessions may be indicative of the specific intent to commit a theft under LSA-R.S. 14:62.[8]
The testimony of the state's witnesses tends to show that Sopczak had been drinking when he committed the burglaries. Voluntary intoxication is a defense to a prosecution for simple burglary only if the circumstances indicate that it has precluded the presence of specific criminal intent.[9] The defendant has the burden of proving the existence of that condition at the time of the offense. The specific legal question is not when the *983 requisite specific intent was formed, but rather whether, at the time the unauthorized entry occurred, the defendant was so intoxicated as to preclude the existence of any specific intent on his part to commit a theft or felony therein.[10] In the instant case, there was no showing by Sopczak that he had been drinking or was intoxicated prior to, or at the time of, the crimes, so that he could not have formed the requisite specific intent. The testimony regarding Sopczak's use of prescription and illegal drugs likewise does not show that Sopczak was intoxicated on those substances at the time the unauthorized entries occurred. Mrs. Amberg did not know whether Sopzcak had a drink at dinner prior to the incident at the Engelhardt office. While the evidence showed that Sopczak has surely been guilty of substance abuse, he failed to prove an intoxicated condition due to drugs at the time of the crimes.
Viewing the foregoing evidence in the light most favorable to the state, the state proved the elements of burglary beyond a reasonable doubt. It remains to be considered whether Sopczak met his burden of proving that he did not know right from wrong at the time of the instant offenses.
His mother, Elizabeth Amberg, testified that she is a registered nurse and works in sales of medical equipment. She stated that prior to 1988, Sopczak's level of intelligence and behavior were normal, and that he graduated from high school, and maintained regular employment. However, he suffered a linear skull fracture while working on a merchant marine vessel in 1988. The injury caused brain swelling that was not treated for five days. Ms. Amberg testified that since the injury, her son's behavior has changed. He has difficulty speaking and forming ideas, and also has problems with memory.
Sopczak subsequently suffered two additional brain traumas. He was attacked with a baseball bat on one occasion, and on another occasion was hit on the head with a wooden board. Ms. Amberg stated that Sopczak condition was exacerbated by the prescription drugs Xanax and Dalmane, which are in the class of drugs known as benozodiazepins. She testified that he was taking those medications at the time he was arrested in 1997. He also became addicted to pain medication prescribed for back and cervical injuries he sustained. Over a period of several years, Sopczak was hospitalized at East Jefferson, West Jefferson, Jo Ellen Smith and River Oaks hospitals, and received treatment for his head injuries and behavioral problems. He was also treated for drug addictions. Ms. Amberg informed one of Sopczak's doctors that he was not doing well on Dalmane and Xanax, but the doctor disregarded her concerns. Ms. Amberg testified that Sopczak had a problem with prescription drugs, but did not abuse "street drugs."
Defense witness Peter Piazza testified that he has known Sopczak for 20 years. Prior to 1988, Sopczak was a nice, normal person. However, after suffering head injuries, he became totally different. He has problems with memory and speech and does not seem to be "all there." In the year prior to trial he had seen Sopzcak three or four times, at which times he was not intoxicated. Mr. Piazza did not know Sopzcak to take drugs.
John Berniard testified that he met Sopczak when the two of them were teenagers. They lived near each other, and played music together, at which time Sopczak was "normal." Berniard testified that Sopczak is now much slower and that he *984 does not seem to understand things. He had not spoken to Sopzcak for twenty years.
Sopczak's brother-in-law, Andrew Rogers, testified that he has a Ph.D. in chemistry, with a minor in biochemistry. He knew Sopczak before the head injuries and he was a normal person then. Since he sustained the injuries, Sopczak's verbal capabilities and thinking processes have deteriorated. He is not the same person he was before the injuries.
Sopczak produced the testimony of three doctors regarding his mental state: Dr. William Black, an expert in neuro-psychology; Dr. Kevin Jackson, an expert in psychiatry and neurology; and Dr. Larry Carver, an expert in psychiatry. Dr. Black testified that he conducted a clinical interview with Sopczak on September 16, 1999, at the Jefferson Parish Prison. On that day Black also performed a series of psychological tests and in addition, he reviewed medical records supplied by Sopczak's mother. His opinion is based on both the interview with Sopczak and the medical records.
Black learned that Sopczak suffered a closed head injury in December 1988, and that he suffered two subsequent head injuries. As a result of his injuries, Sopczak now has two titanium plates in his head holding the bones together. Dr. Black noted that while Sopczak had some areas of adequate cognitive or intellectual functioning, there were several areas in which he had obvious intellectual and cognitive deficits. The doctor found a slight decrease in Sopczak's intelligence, but not much. Sopczak had a problem generating words spontaneously.
Dr. Black found evidence of a notable memory deficit, and Sopczak also had deficits in higher cognitive functioning, which translates to trouble with problem-solving, judgment, and the ability to restrain one's impulses. Sopczak had a slight deficit in attention and concentration. Dr. Black testified that Sopczak suffers from organic brain damage, meaning that a part of the brain has been injured by an outside force, and brain cells have been killed as a result. The parts of the brain primarily affected by the injury are the frontal lobe and the temporal lobe.
In studying a report completed by Dr. Jackson, Sopczak's treating psychiatrist, Dr. Black learned that Sopczak was taking benzodiazepines when he committed the instant offenses. In Black's opinion, that class of drugs can cause adverse effects in some people suffering from organic brain damage. The brain damage magnifies the side effects of the medication, including memory problems, decreased judgment, impulsivity, and sedation. The effects are increased even more when the drugs are combined with alcohol. Black testified that Sopczak has stopped taking Dalmane and Xanax, and is now taking Depakote, a medication more suited to his condition.
According to Dr. Black, Sopczak's abuse of various substances was documented. Sopczak was admitted to River Oaks Psychiatric Hospital on October 24, 1989, and was diagnosed with depression, substance abuse and post-concussive syndrome, but left River Oaks against medical advice. In his report, Dr. Black stated that Sopczak had admitted to spending a personal injury award on illicit drugs. He testified that it is possible for someone to commit the crimes Sopczak committed simply due to drug and alcohol abuse.
Dr. Jackson testified that he has seen Sopczak a total of six times; twice in 1998 and four times during 2000. Like Dr. Black, he found evidence of organic brain damage, and felt that Sopczak's deficits were in the frontal and temporal lobes. Dr. Jackson explained that the frontal lobe *985 is the part of the brain that keeps impulsive behavior in check. A person with damage to the frontal lobe might do things a normal person would not do, including committing criminal acts. Dr. Jackson also noted that Sopczak has a short attention span. He is easily distracted, and has a problem with disinhibition. Jackson further found that Sopczak suffers from depression. Jackson's opinion, Sopczak could be helped with long-term care in a structured environment, such as a hospital.
Dr. Jackson changed Sopczak's medication to Depakote, which tends not to aggravate an impulsivity problem. Prior to starting on Depakote, Sopczak was taking Xanax and Dalmane, which are disinhibiting, and tend to aggravate the problems of one suffering from organic brain damage. Jackson testified that he seldom prescribes benzodiazepines for his patients suffering with brain injuries. He stated that medical records showed Sopczak was treated at the Medical Center of Louisiana after his arrest. A lab report from that hospital shows that Sopczak tested positive for Benzodiazepines.
Dr. Jackson believed Sopczak used alcohol and drugs voluntarily, and that brain cells can be killed by alcohol and drug abuse. He further stated that it is possible that a combination of benzodiazepines, alcohol, and brain damage could have caused Sopczak not to know right from wrong at the time of the offenses, but that he could not be certain of that effect. Moreover, Dr. Jackson testified that he did not know of anyone who could say whether Sopczak knew right from wrong when he committed the burglaries without having examined him at that time. He stated that when someone enters a business by breaking a door or window, it could be a conscious decision, or the person could be acting on a whim. When questioned about Sopczak's statement to Deputy Dumensil that he did not want to go to jail, Dr. Jackson responded that if a person recognizes a police officer as an authority figure and says he does not want to go to jail, he is using rational thought processes.
Dr. Carver testified that he saw Sopczak on three occasions, the first time being on July 18, 2000. Dr. Carver performed an EEG and a CT scan on Sopczak. He conferred with Sopczak's mother, and with Dr. Black. Carver testified that Sopczak appears to suffer from damage to the cortex, the outer covering of the brain. The cortex controls impulses which originate from the limbic system, the inner part of the brain. The CT scan also showed possible damage to the inner part of Sopczak's brain. Carver stated that Sopczak seems to have attention deficit disorder (ADD), as he has difficulty with focusing and concentrating. Sopczak told Dr. Carver that he puts toilet paper in his ears in order to keep sounds out so that he can better concentrate. Dr. Carver said he believes Sopczak suffers from depression, based on his difficulty with sleeping and his "blunted" affect.
Dr. Carver testified that benzodiazepines work to relax the nerves in the brain, beginning with the cortex, heightening the problems of a person already has a compromised cortex. Such a situation would have to be closely monitored. He stated that alcohol acts on the brain in much the same way as benzodiazepines. It induces slurred speech, blurred vision, and poor decision-making.
Dr. Carver explained that he has never given an opinion as to whether an individual is insane, and could not define legal insanity. He stated that he believes Sopczak is currently able to distinguish between right and wrong, and testified that he felt behavior such as Sopczak's is less a function of the inability to tell right from wrong than a simple inability to control *986 oneself. He had no idea of Sopczak's state of mind on December 25th and 26th, 1997. In his opinion, people with head traumas do not necessarily have a problem knowing right from wrong.
The state called as a rebuttal witness Dr. Mark Dean, an expert in the field of psychiatry, and a certified psychoanalyst. He testified that he was retained to evaluate Sopczak to determine whether he was suffering from a mental illness which impaired his ability to tell right from wrong at the time of the crimes which he was alleged to have committed. Dr. Dean stated that, in his opinion, Sopczak was not unable to distinguish between right and wrong because of a mental illness at the time of the alleged criminal acts. According to Dr. Dean, Sopczak was legally sane, and responsible for his actions.
We note that none of Sopczak's expert witnesses examined him until a year or more after the instant offenses. Moreover, none of them were able to say that Sopczak did not know the difference between right and wrong at the time of the offenses. A rational trier-of-fact, considering the foregoing evidence in the light most favorable to the state, could conclude, beyond a reasonable doubt, that Sopczak failed to prove by a preponderance of the evidence that he was insane at the time of the offenses. While the evidence showed that Sopczak had a brain injury that made it difficult for him to control his impulses, and that he abused drugs and alcohol, these factors do not necessarily amount to insanity as defined in Louisiana. Sopczak's criminal responsibility was not negated by the mere existence of a mental disease or defect.[11] There is evidence before the jury that his abuse of alcohol was deliberate, and that his actions in breaking into the two businesses in question were also deliberate. This assignment of error is without merit.

ERROR PATENT REVIEW
Appellant requests, pursuant to La. C.Cr.P. art. 920, a review of the record for errors patent. We note the following error.
In the original sentencing transcript, the court sentenced Sopczak to twelve years at hard labor on each count, to be served concurrently with previous sentences for other similar offenses. In the sentencing transcript of the habitual offender bill, upon accepting defendant's admission to the allegations in the bill, the trial court stated, "The original sentence in case No. 98-1012 I believe was twelve years?" The court further said, "That sentence is vacated. This Court sentences you to eight years at hard labor in case No. 98-1012. And that sentence will run concurrently with the sentences previously imposed upon you in case Nos. 97-6464 and 98-5485."
The commitment states, "The original sentence in regard to both counts is vacated", and continued: "The court sentenced the Defendant as a Third Offender under RS[sic]15:529.1 to imprisonment at hard labor for a term of EIGHT(8) years..... the Court ordered that the above sentence to run concurrently with 24th JDC cases 97-6464 and 98-5485."
While it appears from the commitment that the trial court vacated both of the original sentences, it appears that the court gave but one sentence on the multiple bill. The trial court must impose a separate sentence for each separate count on which the defendant was convicted. Patent sentencing error occurs when *987 a trial court, in sentencing for multiple counts, does not impose a separate sentence for each count.[12] We are aware of the exception to that rule in which this Court has upheld a single sentence for convictions on multiple counts in instances where the sentences for a conviction on each count would more appropriately be concurrent rather than consecutive, and the term of imprisonment is reasonable.[13] In the present case, the trial court clearly intended to impose two sentences on Sopczak, and originally did so. The ambiguity in both the transcript and commitment regarding the multiple offender sentences cannot be resolved by examination of the record before us. Therefore, we find it necessary to vacate the multiple offender sentence, reinstate the original sentences, and remand for re-sentencing on the multiple bill. In so doing, we note that the trial court did not rule on Sopczak's Motion to Reconsider Sentence, filed after his original sentencing. For the foregoing reasons, we affirm the convictions. We vacate the multiple bill sentences and remand for further sentencing proceedings on the multiple bill.
CONVICTION AFFIRMED; SENTENCE ON MULTIPLE BILL VACATED AND REMANDED.
NOTES
[1] LSA-R.S. 15:432; State v. Silman, 95-0154, p. 7 (La.11/27/95), 663 So.2d 27, 32; State v. Washington, 00-301, p. 5 (La.App. 5 Cir. 9/26/00), 769 So.2d 1235, 1238, writs denied, 00-2971 (La.9/28/01), 798 So.2d 106, 00-3041 (La.9/28/01), 798 So.2d 108.
[2] LSA-R.S. 14:14; State v. Silman, supra.
[3] State v. Silman, supra.
[4] State v. Branch, 99-1484, p. 1 (La.3/17/00), 759 So.2d 31, 32 (per curiam).
[5] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[6] State v. Silman, supra.
[7] State v. Bailey, 00-1398, p. 3 (La.App. 5 Cir. 12/14/01), 782 So.2d 22, 24.
[8] State v. Vortisch, 00-67, p. 6 (La.App. 5 Cir. 5/30/00), 763 So.2d 765, 768.
[9] LSA-R.S. 14:15(2); State v. Guidry, 476 So.2d 500 (La.App. 1 Cir.1985).
[10] State v. Lentz, 306 So.2d 683, 686 (La. 1975).
[11] State v. Silman, supra.
[12] State v. Joseph, 96-187 (La.App. 5 Cir. 11/14/96), 685 So.2d 237, 248; State v. Soco, 94-1099 (La.App. 1 Cir. 6/23/95), 657 So.2d 603.
[13] State v. Batiste, 517 So.2d 371 (La.App. 5th Cir.1987).