403 So.2d 652 (1981)
STATE of Louisiana
v.
Clarence Everett WILKERSON.
No. 80-KA-2386.
Supreme Court of Louisiana.
September 8, 1981.
*654 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Lowen B. Loftin, Dist. Atty., William R. Coenen, Jr., Asst. Dist. Atty., for plaintiff-appellee.
James W. Berry, Rayville, for defendant-appellant.
BLANCHE, Justice.[*]
A Richland Parish jury tried and convicted defendant Clarence Everett Wilkerson and a co-defendant, Bobby Joe Fabian, of the June, 1970 aggravated kidnapping of a Delhi, Louisiana town marshall and a state trooper. The jury returned a verdict of guilty without capital punishment and on October 22, 1970, the court sentenced defendant to life imprisonment at hard labor. *655 At that time, defendant indicated to the court that he did not desire to appeal his case, but on November 4, 1970, defendant made a motion for an appeal which the court denied. Defendant motioned through retained counsel for an out of time appeal on November 16, 1979 and the court also denied this motion. Defendant reurged the motion in the summer of 1980, the court granted defendant's request on July 25 and the case is now before this Court on an out of time appeal. Defendant assigns four specifications of error on appeal and for the following reasons, we find no merit to these assignments and affirm defendant's conviction and sentence.
Evidence produced at trial shows that shortly after midnight on the morning of June 5, Wendell Lewis of the Louisiana State Police and Jasper Curry of the Delhi Police pursued and stopped a vehicle in Richland Parish which they believed to be recently stolen. The occupants of the car, identified as the defendant and his co-defendant, drew handguns and disarmed the law enforcement officers when they approached the car. They forced the policemen into the back seat, drove around for a while, then stopped in a bean field. The officers were ordered out of the vehicle and then shot several times each by both defendant and his co-defendant. (Both officers survived the shootings.)
Defendant and co-defendant then fled. The automobile they were operating was later found abandoned with a flat tire, and they were tracked and discovered hiding in a thicket by law enforcement officials.

Assignment of Error Number 1
Defendant first alleges that the trial court erred in failing to grant his October 7, 1970 pre-trial motion for a change of venue. That motion alleged that the Richland Parish public was prejudiced against him and that he could not receive a fair and impartial trial in that venue, largely due to publicity surrounding the capture and arrest of defendants in connection with the alleged June 5, 1970 kidnapping of law enforcement officers. At the October 8 trial of this motion, the defense called as witnesses twenty-three Richland Parish residents who were potential jurors for the fall term, the time defendant was scheduled for trial, and three members of the media. Defendant introduced three exhibits at this hearing: a June 11, 1970 "Delhi Dispatch" newspaper; excerpts from KNOE radio news copy for June 5 and 6, 1970; and films of television broadcasts (the latter is not included in this transcript). A review of this evidence shows that the trial judge's ruling was not erroneous and there was no abuse of judicial discretion in denying defendant's motion for a change of venue.
Louisiana Code of Criminal Procedure art. 622 provides that:
"A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
"In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial."
The burden is on the defendant in a motion for a change of venue to establish that he cannot obtain a fair trial in the parish where the prosecution is pending. C.Cr.P. art. 622; State v. Monk, 315 So.2d 727 (La.1975). Defendant must prove that there exists such prejudice in the collective mind of the community that a fair trial is impossible, and it is not sufficient to show a mere knowledge by the public of facts surrounding the offense. The judgment of the trial court will not be disturbed on review in the absence of an affirmative showing of error and abuse of discretion. State v. Adams, 394 So.2d 1204 (La.1981).
At the hearing of defendant's motion for a change of venue the testimony of potential jurors for the fall term when defendant was scheduled for trial was overwhelming *656 in establishing the fact that the defendant could receive a fair trial in Richland Parish. Defendant's evidence fell far short of showing that there existed in the collective mind of the community such prejudice that a fair trial was impossible. Although a few of the witnesses testified that they had formed an opinion in the case and it would take evidence to convince them otherwise, no witness testified that, in their opinion, the defendant would be unable to get a fair trial. We also note that the witnesses' knowledge of the offense and of defendant's alleged involvement in the offense was not detailed nor common to all witnesses. In fact, three witnesses had never heard of the offense for which defendants were to be tried. We have reviewed the nature of the publicity surrounding the offense and have found it neither inflammatory nor sensational.
The June 11 article in the Delhi Dispatch was entitled "State Trooper-Deputy Marshal Shot". It was a one-column front-page story in this publication circulated in Richland Parish, and was no more prominent in text or title than other local news stories which shared the front page. The article contained a fairly detailed factual account of the kidnapping of the two officers, the shooting and the capture of the men identified as Bobby Joe Fabian and Clarence Everett Wilkerson, the eventual defendants in this case. The article stated that these individuals were wanted in several states on numerous charges. Kenneth O'Neal, publisher of the paper, testified that coverage of the event was no different from any other where someone was shot.
The KNOE radio news copy dated June 5 and June 6 briefly related that the two named individuals were wanted in connection with the shooting of a state trooper and a town marshall. There were also statements in the copy that when the men were apprehended they were armed with hand grenades and a Browning rifle and that they were also wanted for questioning in connection with an Arkansas bank robbery. The copy was apparently read several times on June 5 and 6 over KNOE radio, reaching audiences in Richland Parish.
The television film was shown four times on KNOE television. There is no indication in the record of what the film portrayed.
Defendants later filed two more motions for a change of venue, one just prior to the selection of the jury in the case and another following jury selection and prior to the actual trial of the case. Both motions were denied by the trial judge. The bases for these motions were allegedly prejudicial publicity just prior to defendants' trial date and during jury selection, and the contention that the amount of jurors excused for cause indicated prejudice against the defendants. Defendants introduced four Monroe newspapers as exhibits in connection with these motions.
Exhibit D-4 is a copy of the Monroe Morning World circulated October 12, 1970, one day before defendant's trial began. A front page article entitled "Dixie Mafia Link Found in Area Jail" appeared in the newspaper. The article states that Bobby J. Fabian, co-defendant of appellant Wilkerson, claimed to be a trigger man in the pistol slaying of a Memphis businessman. Practically the entire article dealt with Fabian, his possible link with the Dixie Mafia, and his involvement in the Memphis shooting. The article specifically stated that Wilkerson was not believed to be connected with the slaying and no connection with Wilkerson and the Dixie Mafia was implied. There was a very brief account of the capture of defendants following the kidnapping and a statement that defendants were wanted in connection with robberies in Arkansas and Mississippi.
Exhibits D-5 and D-6 were published respectively the day before and the day of trial. These small articles simply stated when the trial began and gave a very brief actual summary of the case. The last two exhibits were papers dated the afternoon of the first day of trial and the next morning. Again, the status of the trial was discussed and there was a brief summary of the capture of defendants and of the charge against them. These articles also referred to the fact that defense attorneys had requested *657 a change of venue and that the judge had denied the request.
Finally, in support of defendants' motion for a change of venue on the day of the trial, counsel orally alleged that prejudice was apparent since 20-25 of 82 or 83 jurors testified they were prejudiced against defendants. In defendant Wilkerson's current argument before this Court, he alleges that 35 prospective jurors were excused for cause on voir dire. There is no indication of which potential jurors were excused for cause because of prejudice against defendant and no evidence, other than counsel's allegations, that 20-25 jurors stated on voir dire that they were prejudiced against defendant. In any event, the cumulation of evidence does not prove the requisite community prejudice or undue influence or any other reason which would entitle defendant to a change of venue.
In State v. Bell, 315 So.2d 307 (La.1975), this Court set out certain factors to be considered in determining whether a change of venue is warranted. An application of these factors to the facts of this case confirms that the trial judge did not abuse his discretion in denying defendant's motion. According to Bell, some relevant factors in determining whether to change venue are:
(1) The nature of pretrial publicity and the particular degree to which it has circulated in the community.
Again, the nature of the publicity in this case was not inflammatory or prejudicial but mainly involved factual accounts. The degree of circulation may have been somewhat widespread (Richland Parish is a small parish), although some did testify they heard nothing of the event. The publicity surrounding the event was apparently limited to only a few days after the perpetration of the crime.
(2) The connection of government officials with the release of publicity.
There is no proof of any connection of government officers with the release of publicity. Kenneth O'Neal of the Delhi Dispatch indicated his news reports were based on conversations he initiated with members of local law enforcement agencies, and there was no evidence of police press conferences or news releases.
(3) The length of time between the dissemination of the publicity and the trial.
There was a relatively short period of time between the publicity of the crime and the trial (about four months).
(4) The severity and notoriety of the offense.
The severity of the offense is great (kidnapping of law enforcement officers), and it was also publicized that the officers were shot. These factors also contributed to the notoriety of the offense.
(5) The area from which the jury is to be drawn.
The area from which the jury was to be drawn is relatively small. These former three factors, alone, however, do not indicate defendant could not receive a fair and impartial trial in Richland Parish.
(6) Other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant.
There was no proof of any events in the community which would affect the attitude of the community toward defendants. For example, in the case of State v. Felde, 382 So.2d 1384 (La.1980), the Court felt that a change of venue should have been granted to a defendant on trial for the first degree murder of a policeman, due to extensive publicity of subsequent police shootings and the trial of the accused in those cases. No such events occurred in this case.
(7) Any factors likely to affect the candor and veracity of the prospective jurors on voir dire.
The defense proved no factors likely to affect the candor and veracity of the prospective jurors on voir dire. For the above reasons, we hold that defendant did not meet his burden of proof on his motions for a change of venue, and there was no showing of error or abuse of discretion in the trial judge's denial of those motions.

*658 Assignment of Error Number 2

Defendant contends in this assignment of error that the trial judge erred in denying defendant's motion for the appointment of a sanity commission. Defendant filed this motion prior to trial on September 25, 1970, the same day that he withdrew his prior plea of not guilty and entered a plea of not guilty and not guilty by reason of insanity. Defense counsel alleged in his motion that the defendant was extremely confused and depressed, had no clear recollection of the crime he was charged with, and had suffered four severe blows to the head within the last two years. Defendant's counsel also alleged that defendant had been sent to the Arkansas State Mental Hospital in Little Rock, Arkansas on one previous occasion for observation. Defendant was alleged to be unable to understand the proceedings against him, or to assist in his defense as a result of his mental condition. Defendant also argues on appeal that it was error for the trial court to deny his motion without first conducting a hearing.
According to C.Cr.P. art. 643 (as it read at the time of defendant's motion[1]):
"The Court may order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed."
The appointment of a sanity commission to inquire into the mental condition of the accused is addressed to the sound discretion of the trial judge, and his ruling will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Nix, 327 So.2d 301 (La.1975), reh. den. 1976.
The accused bears the burden of establishing by a clear preponderance of the evidence reasonable grounds for the judge to believe that he is mentally defective or was at the time of the offense. State v. Vincent, 338 So.2d 1376 (La.1976). Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense. C.Cr.P. art. 641. Where the issue is presented by bare allegations without supporting evidence, the exercise of discretion conferred on the trial judge will not be disturbed. Vincent, supra.
Defendant applied to this Court for a writ to review the trial judge's ruling prior to trial but this Court denied that writ, State v. Wilkerson, 256 La. 890, 239 So.2d 544 (1970), on the ground that "There is no showing to warrant the exercise of our supervisory jurisdiction." A review of that writ application and the transcript of the argument of the motion shows that the trial judge denied the motion based upon his observance of defendant and a reading of the motion. The judge stated that he could change his mind, but that he saw no reason at that time to appoint a sanity commission. Although counsel for defendant objected to the judge's ruling in the course of his argument on the motion, he made no effort to introduce evidence in support of his allegations, and did not request a hearing on his motion. Under these circumstances we hold that defendant did not meet his burden of proof and did not attempt to do so by any means other than unsubstantiated allegations in his motion, and we will not disturb the trial judge's exercise of discretion in denying that motion.

Assignment of Error Number 3
By this assignment, defendant complains that the trial court erred in overruling defendant's objection to testimony concerning events which transpired after the police officers were kidnapped, shot and released. The testimony at issue was that of Madison Parish Deputy Sheriff John Cupit, Carl Williamson of the Tallulah Police Department, and Madison Parish Sheriff Roland Mitchell and concerned the flight and eventual capture of the defendant and his partner. Defendant contended at trial and reurges on *659 appeal that this testimony was irrelevant to proof of the charged offenses and served only to inflame and prejudice the jury against him.
Revised Statute 15:441 provides:
"Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
"Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."
In State v. Davies, 350 So.2d 586, 588 (La.1977), this Court stated:
"Evidence of flight, concealment, and attempt to avoid apprehension is relevant. It indicates consciousness of guilt and therefore, is one of the circumstances from which the jury may infer guilt. This rule applies notwithstanding that the evidence may disclose another crime. State v. Brown, La., 322 So.2d 211 (1975); State v. Graves, La., 301 So.2d 864 (1974); State v. Nelson, 261 La. 153, 259 So.2d 46 (1972). See also State v. Lane, La., 292 So.2d 711 (1974); State v. Johnson, 249 La. 950, 192 So.2d 135 (1966); State v. Goins, 232 La. 238, 94 So.2d 244 (1957); 29 Am.Jur.2d, Evidence, §§ 280 et seq., pp. 329 et seq. A court may admit a wide range of evidence to prove flight, concealment, and attempt to avoid apprehension. State v. Nelson, supra."
In the case at bar, the evidence of flight was certainly relevant to the issue of guilt and was admissible. The circumstances of the arrest were also relevant to prove the identity of the kidnappers. A description of the perpetrators' flight and arrest was necessary to link their arrest in the open country with the automobile abandoned on the highway.
This assignment is without merit.

Assignment of Error Number 4
Defendant contends in his last assignment that the trial judge erred in permitting the defendant to be handcuffed in the presence of the jury.
At 5:20 p. m. on October 15, trial was adjourned for the day. Before the jury was able to file out of the courtroom, a member of the sheriff's office handcuffed the defendant and his co-defendant. More than one-half of the jury passed within three or four feet of the defendant and, defendant argues, saw that he was handcuffed. On this basis, defense counsel moved for a mistrial.
Ordinarily, a defendant before the court should not be shackled or handcuffed or garbed in any manner destructive of the presumption of his innocence and of the dignity and impartiality of judicial proceedings. Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); State v. Clark, 340 So.2d 208 (La.1976); State ex rel. Miller v. Henderson, 329 So.2d 707 (La. 1976). However, exceptional circumstances may require, within the discretion of the trial court, the restraint of the prisoner for reasons of courtroom security or order or where the prisoner's past conduct reasonably justifies apprehension that he may attempt to escape. State ex rel. Miller v. Henderson, supra; State v. Daniel, 297 So.2d 417 (La.1974).
If the handcuffing is objected to at the time of trial, for a finding of reversible error the record must show an abuse of the trial court's reasonable discretion resulting in clear prejudice to the accused. State ex rel. Miller v. Henderson, supra.
In the instant case, the defendant's apparent disregard for the authority and lives of police officers would suggest that some security measures were in order. Further, the defendant and his co-defendant were not handcuffed during trial. They were handcuffed solely for purposes of transport to and from the courtroom. Under the circumstances, the possibility that on one occasion several jurors may have seen the defendant in handcuffs does not appear to have so prejudiced the defendant as to warrant relief on appeal.
This assignment is without merit.
Accordingly, defendant's conviction and sentence are affirmed.
AFFIRMED.
*660 LEMMON, J., concurs and assigns reasons.
REDMANN, J., pro tem., dissents with reasons.
LEMMON, Justice, concurring.
The trial court erred in not conducting a hearing on defendant's pretrial motion for appointment of a sanity commission. However, during the course of the trial defendant's conduct demonstrated that he was fully aware of the nature of the proceedings and that he was able to assist in his own defense. The error is therefore harmless.[1]
REDMANN, Justice, Pro Tem., dissenting.
This Court is unconstitutionally constituted and an accused is denied due process of law by his or her case's being referred to it instead of to the Louisiana Supreme Court as constituted by La.Const. Art. 5 §§ 1, 3 and 4, to which this Court should order this case referred.
See the writer's dissent, State v. Petterway, La.1981, 403 So.2d 1157, 1161.
NOTES
[*] Judges William V. Redmann and Thomas J. Kliebert of the Court of Appeal, Fourth Circuit and Judge Cecil C. Cutrer of the Court of Appeal, Third Circuit, participated in this decision as Associate Justices Pro Tempore, joined by Associated Justices Calogero, Dennis, Blanche and Lemmon.
[1] This article was subsequently amended by Acts 1975, No. 325, § 1 to require the trial court to order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed.
[1] The standard for judging harmless error arguably should be relaxed when an out-of-time appeal is considered ten years after the conviction.