841 So.2d 936 (2003)
STATE of Louisiana
v.
Daimon WILLIAMS.
No. 02-KA-1016.
Court of Appeal of Louisiana, Fifth Circuit.
February 25, 2003.
*938 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District Court, Jefferson Parish, Terry M. Boudreaux, Alan D. Alario, II, Assistant District Attorneys, Appellate Counsel, Gretna, LA, for Appellee, State of Louisiana.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, for Appellant, Daimon Williams.
Panel composed of Judges, JAMES L. CANNELLA, THOMAS F. DALEY and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
On May 4, 2001, the Jefferson Parish District Attorney filed a bill of information charging defendant, Daimon Williams, with possession of cocaine on or about March 30, 2001, in violation of La. R.S. 40:967(C). On September 14, 2001, the six-person jury unanimously found defendant guilty as charged. On September 25, 2001, the trial court sentenced defendant to imprisonment at hard labor for five years. Defendant orally objected to the sentence and moved for an appeal.
On September 27, 2001, the State filed a bill of information alleging that defendant was a fourth felony offender. Defendant denied the allegations of the multiple bill on that same date. On October 31, 2001, defendant filed a motion to appoint sanity commission to determine competency to proceed. After a competency hearing was held on February 6, 2002, defendant was found competent to proceed with the multiple offender hearing.
On April 23, 2002, the trial court found defendant to be a fourth felony offender, vacated the original sentence, and sentenced defendant to thirty years at hard labor. Defendant orally objected to the sentence and moved for an appeal. On April 26, 2002, defendant filed a written motion for appeal, which was granted. Defendant's motion to reconsider sentence filed that same day was denied.
Facts
On March 30, 2001, Officer Raymond J. Lassiegne, and his partner, Officer Sarah Goodwin, both assigned to the Community Policing Section[1] of the Gretna Police Department, were patrolling the Suburban Park area of Gretna, Louisiana, in a marked police unit. On that date, Officer Lassiegne had been assigned to Suburban Park, an area with "plenty" of drug activity, for approximately two years. At about 4:00 p.m. that afternoon, the officers were traveling east on Kepler Street towards the Westbank Expressway. When they turned north from Kepler onto LeBoeuf Street, Officer Lassiegne observed two black males standing in front of an apartment complex on the corner of LeBoeuf and Solon Street. Both men looked up at the police car, turned away quickly, and *939 started walking up Solon Street toward the Westbank Expressway.
Because Officer Lassiegne thought their behavior was suspicious, he proceeded down LeBoeuf Street and turned onto Solon Street. When Officer Lassiegne turned onto the street, the two men were approximately halfway down the block. When defendant looked back and saw the police car, he started running. The other man continued to walk.
Officer Lassiegne pursued the defendant who ran across a parking lot toward a building. Officer Lassiegne saw defendant throw an object, with his right hand, into the bushes near the corner of the building. Defendant ran again, but then suddenly stopped.
Officer Lassiegne then stopped defendant. By that time, the man who had been walking with the defendant, later identified as Michael Williams, reached the parking lot and, at Officer Lassiegne's instruction, walked toward his police car. For his safety, Officer Lassiegne checked the two men for weapons. At that point, Detective Russell Lloyd, a Group Supervisor of the Narcotics Division of the Gretna Police Department, arrived at the scene to assist Officer Lassiegne.
When Detective Lloyd arrived, he observed Officer Lassiegne and two black males with their hands on the hood of the police car. Officer Lassiegne asked Detective Lloyd to watch the defendant so that he could retrieve the object that defendant had thrown in the bushes. Detective Lloyd, for safety reasons, moved defendant away from Officer Lassiegne's car, where Michael Williams was being detained, to his unmarked patrol car.
Officer Lassiegne recovered a clear plastic bag, which contained small, off-white colored rocks, from the bushes. Although Officer Lassiegne did not show the object to defendant or tell him what he found, defendant started to struggle and screamed, "That's not mine, that's not for me, that's not for me." The officers restrained defendant and handcuffed him without further incident.[2]
Detective Lloyd testified that Michael Williams did not struggle or try to run away from him during the stop. When Detective Lloyd field-tested the substance from the plastic bag, it tested positive for cocaine. At trial, Detective Lloyd identified State's Exhibit 1 as the plastic bag that Officer Lassiegne retrieved.
Officer Lassiegne testified that he did not see Michael Williams discard any objects at any time that afternoon and he also did not see Michael near the bushes where the plastic bag was found. He further testified that, in the two years that he had been patrolling this neighborhood, he had never seen either man before that day. Moreover, he testified that neither of their home addresses are near the location where the incident occurred.
Importantly, Officer Lassiegne testified that Michael Williams did not admit that the drugs belonged to him at the scene that day. Lastly, Officer Lassiegne testified that he issued a summons to Michael Williams for public consumption of alcohol and allowed Michael to leave.
Michael Williams, who testified for the defendant, waived his Fifth Amendment right against self-incrimination. He testified that, on the day in question, he and defendant were walking across a parking lot off of Solon Street drinking daiquiris. *940 Michael saw the police car going through the neighborhood on their daily route. Defendant also saw the police car. When the police car went around the corner, defendant ran because of an outstanding attachment.
Michael testified that the drugs belonged to him. Michael stated that defendant did not encourage or assist him in buying the drugs. Michael Williams also testified that, by the time the police car had pulled up to the corner of the building that day, he had already thrown the drugs into the bushes.
According to Michael, defendant fell down after the first police car arrived then got up, tried to walk, but then stopped. The police then stopped both of them, put them on the police car, and handcuffed the defendant.
According to Michael, when defendant later tried to walk off, the police officers slammed him on the ground. They picked him up then slammed him on the police car. After that, the officers asked Michael his name and ran both of their names through the computer. Then the officers walked around the bushes for about five minutes until they found the drugs and said, "You know what I'm taking you for." Defendant denied the drugs belonged to him.
The officers put defendant in the back of the police car and put Michael in the front of the police car. The police officers then said, "We weren't going to bother you, but thanks to your compadre, who ran, we came." According to Michael, the white male police officer said to him, "Your compadre says that it's your drugs." Michael did not admit, however, to the police officer at that point that the drugs belonged to him.
On cross-examination, Michael admitted that defendant was his uncle. Michael testified that he had no felony convictions. Michael testified that he was not going to use the drugs, but distribute them. He also testified that he told the police at the scene that he would come to the police station to tell them what really happened. Michael admitted that he never went to the police station.
When Officer Lassiegne was recalled by the State, he stated that Michael Williams did not even get to the parking lot until after defendant had thrown the drugs into the bushes and that he was nowhere near where defendant threw the drugs at any point before the drugs were retrieved. Officer Lassiegne also testified that Michael did not say that he would come to the police station to explain the situation.
When Detective Lloyd was recalled by the State, he testified that he did not retrieve any drugs in this case and did not search the area for narcotics. Further, Michael Williams did not tell him that he wanted to come down to the police station to explain the situation.
After hearing the testimony and evidence, the six-person jury unanimously found defendant guilty as charged. On appeal, defendant assigns four errors: it was error to fail to order a pre-trial competency hearing; the trial court erred in failing to declare a mistrial premised upon the prosecutor's closing argument reference to appellant's criminal record, the trial court imposed an excessive sentence and assigned as error are all errors patent.
Law and Argument
In his first assignment of error, defendant argues that the trial court erred in denying his motion to appoint a sanity commission. He contends that his motion should have been granted because he had been placed on suicide watch while incarcerated and he had a history of mental illness for which he had been prescribed Thorazine. Defendant asserts that *941 the trial court's off-the-record proceeding, beyond the reach of trial counsel or this reviewing Court, did not satisfy defendant's due process rights and placed into question the validity of the entire proceeding against him. The State responds that defendant presented no reasonable grounds to doubt his mental capacity to proceed either in his pleadings or in oral argument.
We have reviewed the record, which reflects the following events, with respect to a pre-trial competency hearing. On September 13, 2001, the first day of trial, defense counsel stated in court that he was not ready for trial because defendant had spent a week on suicide watch. On the record, the trial judge stated that the deputy, who escorted defendant from the jail to court, had informed her that defendant was on security watch, which is different from suicide watch. Defense counsel insisted that he saw a sign where defendant was incarcerated that said "Suicide watch," that defendant was either taking Thorazine or had been prescribed Thorazine, and that there should be a mental health history in the records.
Defense counsel also stated that he had filed a motion for appointment of a sanity commission, which was "dated and signed and stamped within the last 10 minutes." We note that the record does not contain a copy of a written motion for appointment of a sanity commission filed on September 13, 2001.[3] The prosecutor, however, must have reviewed a copy of a motion because he subsequently responded that the motion did not state sufficient grounds or a reasonable basis for appointment of a sanity commission.
Defense counsel stated that he could "instanter subpoena" defendant's medical record; the record, however, does not contain a copy of defendant's medical record from Jefferson Parish Correctional Center. Defense counsel also stated that defendant was prescribed Thorazine within the last 60 days but that defendant quit taking this medication. Further, defendant had disciplinary problems at the jail, which defense counsel asserted indicated his mental condition.
The prosecutor responded that defense counsel's argument did not provide any reasonable grounds to suggest that the defendant did not possess the mental capacity to proceed. Finally, the prosecutor argued that Thorazine is an anti-depressant, not an anti-psychotic.
The trial judge then, without objection from defense counsel or the prosecutor, spoke with the Jefferson Parish Correctional Center's social worker on the telephone. The trial judge subsequently denied the motion for a sanity commission without providing reasons, and defense counsel noted an objection.
In State v. Washington,[4] this Court set forth the pertinent law regarding competency issues:

*942 According to La.C.Cr.P. art. 641, "[m]ental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense." A defendant's mental incapacity to proceed may be raised by the defense, the district attorney, or the court at any time. La.C.Cr.P. art. 642; State v. Clark, 367 So.2d 311, 313 (La.1979); State v. Payne, 586 So.2d 652, 654 (La. App. 5th Cir.1991).
The law presumes a defendant's sanity. La. R.S. 15:432; State v. Bibb, 626 So.2d 913, 927 (La.App. 5th Cir.1993), writ denied, 93-3127 (La.9/16/94), 642 So.2d 188. A defendant has the burden of proving by a preponderance of the evidence that, as a result of a mental disease or defect, he lacks the capacity to understand the proceedings against him or to assist in his defense. State v. Brooks, 541 So.2d 801, 805 (La.1989); State v. Bibb, supra. The trial court is required to order a mental examination of the defendant only when it has reasonable grounds to doubt the defendant's mental capacity to proceed. La. C.Cr.P. art. 643; State v. Bibb, at 928. The ordering of a sanity commission rests in the sound discretion of the trial court. State v. Fish, 99-1280 (La.App. 5th Cir.4/12/00), 759 So.2d 937. Furthermore, when the issue of a defendant's incapacity to proceed is presented by "bare allegations without supporting evidence, the exercise of discretion conferred on the trial judge will not be disturbed." State v. Wilkerson, 403 So.2d 652, 658 (La.1981).
State v. Washington, 769 So.2d at 1238.
Reasonable ground in this context refers to information which, objectively considered, should reasonably raise a doubt about the defendant's competency and alert the court to the possibility that the defendant can neither understand the proceedings, appreciate the proceedings' significance, nor rationally aid his attorney in his defense.[5]
In Washington, supra, defendant orally requested that the trial court appoint a sanity commission to determine the defendant's present mental capacity based on certain responses on the intake booking sheet. According to defense counsel, question five on the sheet asked whether the inmate appeared despondent, down or depressed, or irrational, crazy, hearing voices or reacting strangely. The word "yes" was checked next to this question. Additionally, defense counsel asserted that the defendant had recently indicated he had taken the medications Elavil and Thorazine when he was previously incarcerated in the parishes of East Baton Rouge and Orleans, and that he was currently taking Sinequan. The trial court denied the motion.
On appeal, this Court found that defense counsel had presented no evidence of the defendant's inability to proceed except the answer to question five and the information regarding the defendant's medication. The Washington court held that the trial court did not abuse its discretion in denying the motion to appoint a sanity commission, and that defense counsel did not meet his burden of proof of calling defendant's ability to proceed into question.
Louisiana courts have affirmed the denial of a motion for a sanity commission *943 under similar circumstances when the motion is unsubstantiated. In State v. Wilkerson, supra, the motion contained allegations that the Defendant was confused, depressed, and had no recollection of the charged offense, that the defendant had suffered severe blows to the head in the past two years and that the defendant had been sent to the state's mental hospital on a prior occasion. Finally, the motion alleged that the defendant's mental condition prevented him from understanding the proceedings against him and from assisting counsel in his defense. Id. at 658. The Louisiana Supreme Court noted that the defendant did not request a hearing on the motion, nor did he present any evidence in support of the allegations therein. The Court held that the trial judge had not abused his discretion in denying the defendant's motion, since the defendant had not met his burden of proof and "did not attempt to do so by means other than unsubstantiated allegations in his motion." Id. at 658.
State v. Washington, 769 So.2d at 1239.
In this case, defense counsel argued that defendant was on suicide watch, was taking Thorazine, had disciplinary problems, and had been "locked down." He failed, however, to introduce evidence in support of these allegations. He did not subpoena or call witnesses to testify regarding defendant's alleged incompetency and he failed to introduce medical records to support his contentions. Based on the foregoing, we find, as in Washington, that the trial court did not err in denying defendant's motion to appoint a sanity commission. Accordingly, this assignment of error lacks merit.
In his second assignment of error, defendant argues that the trial court erred in failing to declare a mistrial based upon the prosecutor's reference to his criminal record during closing argument. Defendant claims the prosecutor's comments were made in response to his defense that the drugs belonged to his cousin, Michael Williams. The State responds that a mistrial was not warranted because the prosecutor did not expressly refer to other crimes committed by defendant.
In his closing argument, the prosecutor during rebuttal stated, "[y]ou know this is one of the smoke screens exactly what [defense counsel] said [sic]. Let's bring in somebody else that [sic] really doesn't have any prior convictions, knows that he can get probation, if [the State] can even prosecute him to begin with...." Defense counsel objected and asked to argue the objection at the end of closing arguments. The prosecutor continued in the same vein,
Doesn't have any prior background, knows that he can come in here and put this in front of you and very possibly get probation. Very possibly get probation in all likelihood for a first offender and walk out of this court. So he knows that he can get away with it. If, if we would be able to prosecute him.
At the end of closing arguments, defense counsel argued that:
[t]he District Attorney said words to the effect that Michael Williams was the only one who could take the charge because he had no prior record. Implying clearly that the defendant couldn't because he has a prior record. [sic] And that was as direct a comment as possible on the fact that the defendant had a prior record."
The trial judge denied the motion for mistrial. Defense counsel objected but did not request an admonition.
La.C.Cr.P. art. 774 provides the scope of closing argument as follows:

*944 The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
Even if closing arguments go beyond the scope of La.C.Cr.P. art. 774, the errors are harmless unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict.[6]
La.C.Cr.P. art. 770 provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:

* * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
The decision to grant or deny a mistrial is within the sound discretion of the trial court. The denial of a motion for a mistrial will not be reversed on appeal unless the court has abused its discretion.[7] Mistrial is a drastic remedy and is warranted only where remarks result in substantial prejudice sufficient to deprive defendant of a fair trial.[8] A determination of whether prejudice has resulted lies within the sound discretion of the trial judge.[9]
In this case, the prosecutor's remarks during rebuttal closing argument were not a reference to another crime by defendant. It is important to remember that defense counsel's main argument against convicting defendant of cocaine possession was that Michael Williams, defendant's nephew, testified at trial that the drugs belonged to him. During rebuttal, the prosecutor was arguing that Michael Williams admitted the drugs belonged to him in order to protect his uncle. The prosecutor was explaining that Michael Williams was able to claim that the drugs were his without fearing a long prison term because Michael did not have any prior convictions and, therefore, would probably get probation.
Based on the foregoing, we find that the prosecutor's remarks were not impermissible references to other crimes. Further, we hold that the trial court did not err in failing to grant a mistrial.
In his third assignment of error, defendant argues that his 30-year sentence for possession of cocaine as a fourth felony offender is constitutionally excessive, even though it falls within the statutory limits *945 provided by the Legislature. He contends that three of his four felony convictions were for possession of small amounts of cocaine, which does not merit the penalty imposed. Defendant claims the sentence is disproportionate to the harm occasioned by his crime, that he has a history of nonviolent drug offenses indicating he has been addicted to cocaine for his entire adult life, that the most recent conviction was for a small amount of cocaine suitable for personal use, and that he was not a major narcotics trafficker.
Before addressing the merits of defendant's third assignment of error, we must address the leniency of his sentence. On April 23, 2002, defendant was found to be a fourth-felony offender and sentenced to 30 years at hard labor pursuant to La. R.S. 15:529.1.
Defendant's underlying conviction is a felony drug offense committed on March 30, 2001. On that date, La. R.S. 15:529.1(A)(2)(c)(ii) read as follows:
If the fourth or subsequent felony or any of the prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or of any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence. [Emphasis added.]
In Act 403 of the 2001 Regular Session, effective June 15, 2001, the Louisiana Legislature amended La. R.S. 15:529.1(A)(2)(c)(ii) to read as follows:
If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(13), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence. [Emphasis added.]
This Court has held that the preamendment version of La. R.S. 15:529.1 applies when the underlying offense is committed before the effective date of Act 403, even when the sentence is imposed after the effective date of Act 403.[10] As noted above, defendant's underlying offense was committed on March 30, 2001; thus, under our current jurisprudence, the pre-amendment statute is applicable in this case.
Under the pre-amendment statute, the mandatory minimum sentence for defendant is life imprisonment without benefit of parole, probation, or suspension of sentence. Defendant's thirty-year sentence is, thus, illegally lenient.
This Court has authority under La.C.Cr.P. art. 882 to correct an illegally lenient sentence despite the failure of either party to raise the issue in the district court or on appeal.[11] Nonetheless, we also *946 recognize that La.C.Cr.P. art. 882 is permissive.[12] Further, this Court has recognized that the trial judge, as in this case, may consider the legislative change to the habitual offender statute as evidence of its intent.[13] Thus, while we recognize that defendant received an illegally lenient sentence, we decline to exercise the discretion provided in La. C.Cr.P. art. 882 under the facts presented in this case.
Now, we reach the merits of defendant's argument that his sentence was constitutionally excessive. The Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering.[14] The trial judge has wide discretion in imposing sentences within the statutory limits, and sentences will not be set aside absent manifest abuse of that broad discretion.[15] Three factors should be considered in reviewing a judge's sentencing discretion: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentence imposed for similar crimes by the same court and other courts.[16] There is no requirement that specific matters be given any particular weight at sentencing.[17]
At the hearing on the multiple-offender bill, the trial judge discussed defendant's potential sentence exposure with the prosecutor and defense counsel. Further, the trial judge inquired into defendant's previous periods of incarceration. In response, the prosecutor indicated that defendant received a suspended sentence on his first conviction. Defense counsel indicated that, beginning in 1997, defendant served two years at hard labor. Further, on another felony, defendant was, in 1997, also sentenced to 658 days at hard labor but given credit for time served.
At the multiple bill hearing, defense counsel argued that a long-term jail sentence would not best serve defendant or the community. In support of her argument, defense counsel cited defendant's long-term cocaine addition, the fact that he had never received any type of drug treatment, his mental illness that requires medication, his young age, and the newly amended habitual offender law indicative of changing societal views on drug-related offenses. Thereafter, the trial judge vacated the original sentence in the underlying felony and imposed a 30 year sentence.
After reviewing the record in this case including the certified copies of defendant's three predicate convictions, we do not believe that a sentence of thirty years for this defendant on his fourth felony offense is constitutionally excessive. *947 Under the amended habitual offender statute, the sentencing range for defendant is 20 years to life. La. R.S. 15:529.1(A)(2)(c)(i). The trial court sentenced defendant to 30 years, which is at the lower end of the sentencing range. Moreover, under the pre-amendment version of La. R.S. 15:529.1, the mandatory minimum sentence for a defendant with three drug felonies and a violent felony was life imprisonment without benefit of parole, probation, or suspension of sentence. In sum, we find no merit in defendant's argument that his thirty-year sentence is excessive.
In his final assignment of error, defendant assigns all errors patent. We have reviewed the record for errors patent and found none requiring remand. La.C.Cr.P. art. 920.
AFFIRMED.
NOTES
[1] The mission of Gretna Police Department's Community Policing Section, or "COPS," is to target specific neighborhoods to eliminate drug activity and other problems in those neighborhoods.
[2] That day, defendant was also issued a misdemeanor summons for public consumption of alcohol, which is not at issue in this appeal.
[3] The record contains a Motion to Appoint Sanity Commission that was filed on October 31, 2001, about six weeks after defendant's trial on this charge. The trial court granted that motion and a competency hearing was held on February 6, 2002. At that hearing, Dr. Richard Richoux, a psychiatrist, testified that he and Dr. Raphael Salcedo, also a psychiatrist, examined defendant on January 9, 2002. Dr. Richoux explained that it was their conclusion that, while the presence of a functional mental illness or some form of a psychotic disorder, could not be ruled out, it was under good control, if it was present, as of that time, and it in no way prevented defendant from being able to understand the legal proceedings or to prevent him from being able to assist counsel. The trial judge found defendant competent to proceed with the multiple offender hearing and trial on an unrelated criminal charge that was later dismissed.
[4] 00-301 (La.App. 5 Cir. 9/26/00), 769 So.2d 1235, writs denied, 00-2971 (La.9/28/01), 798 So.2d 106, 00-3041 (La.9/28/01), 798 So.2d 108, writ granted on other grounds, 02-1316 (La.5/31/02), 816 So.2d 863.
[5] State v. Snyder, 98-1078 (La.4/14/99), 750 So.2d 832, 851 (quoting Lokos v. Capps, 625 F.2d 1258, 1261 (5th Cir. 1980)).
[6] State v. Byrne, 483 So.2d 564 (La. 1986), cert. denied, Byrne v. Louisiana, 479 U.S. 871, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986).
[7] State v. Ratcliff, 98-101 (La.App. 5 Cir. 2/23/99), 731 So.2d 356, 363, writ denied, 99-1112 (La.9/3/99), 747 So.2d 541.
[8] State v. Overton, 618 So.2d 439, 441 (La. App. 5 Cir. 1993).
[9] State v. Smith, 430 So.2d 31, 44 (La. 1983).
[10] See State v. Ventress, 01-1165 (La.App. 5 Cir. 4/30/02), 817 So.2d 377, 380-383; State v. Flagg, 01-965 (La.App. 5 Cir. 3/26/02), 815 So.2d 208, 209-212, with one judge dissenting with reasons.
[11] State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790.
[12] State v. Jordan, 02-820 (La.App. 5 Cir. 12/30/02), 836 So.2d 609.
[13] State v. Ventress, 817 So.2d at 384 (citing State v. Clark, 391 So.2d 1174, 1176 (La. 1980)).
[14] State v. Lobato, 603 So.2d 739, 751 (La. 1992); State v. Munoz, 575 So.2d 848, 851 (La.App. 5 Cir.1991), writ denied, 577 So.2d 1009 (La. 1991).
[15] State v. Lanclos, 419 So.2d 475, 478 (La. 1982); State v. Rainey, 98-436 (La.App. 5 Cir. 11/25/98), 722 So.2d 1097, 1106, writ denied, 98-3219 (La.5/7/99), 741 So.2d 28.
[16] State v. Le, 98-1274 (La.App.6/30/99), 738 So.2d 168, 171, writ denied, 00-2174 (La.4/12/01), 789 So.2d 587; State v. Medious, 98-419 (La.App. 5 Cir. 11/25/98), 722 So.2d 1086, 1092, writ denied, 98-3201 (La.4/23/99), 742 So.2d 876.
[17] State v. Jones, 33,111 (La.App. 2 Cir. 3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385.