SUSAN M. CHEHARDY, Judge.
12In his second appeal, defendant/appellant challenges his conviction for armed robbery. For the following reasons, we affirm defendant’s conviction and sentence.

Procedural History

On August 12, 2005, the Jefferson Parish District Attorney filed a bill of information charging Terrance M. Williams with one count of armed robbery, in violation of La. R.S. 14:64, and one count of felon in possession of a firearm, in violation of La. R.S. 14:95.1. The State subsequently dismissed the charge of felon in possession of a firearm.
On July 21, 2008, trial commenced on the armed robbery charge.[1] On July 24, 2008, the twelve-person jury found defendant guilty as charged. Defendant filed a motion for new trial on August 20, 2008 alleging that the verdict was contrary to the law and evidence and the ends of justice would be served by | ..¡granting a new trial since defendant was shackled for the entirety of his trial. On August 21, 2008, without ruling on defendant’s motion for new trial, the trial judge sentenced defendant to imprisonment at hard labor for 49 years without benefit of parole, probation, or suspension of sentence. Defendant filed a motion for appeal, which was granted.
In defendant’s first appeal, this Court recognized that the record did not reflect a ruling on defendant’s motion for new trial, which is patent error that requires remand. State v. Williams, 09-82, pp. 2-3 (La.App. 5 Cir. 12/29/09), 30 So.3d 975, 976. Accordingly, this Court pretermitted discussion of the merits of defendant’s appeal,[2] vacated defendant’s sentence, and remanded the matter for a ruling on defendant’s motion for new trial. This Court also reserved to defendant his right to appeal his conviction and sentence in the event of an unfavorable ruling on the motion. Williams, 09-82 at 3-5, 30 So.3d at 976-77.
On March 16, 2010, defendant filed a pro se motion for new trial. On March 25, 2010, after a hearing, the trial judge denied defendant’s counseled and pro se motions for new trial. That day, defendant waived sentencing delays and the trial judge sentenced him to imprisonment at hard labor for 49 years without benefit of parole, probation, or suspension of sentence. On September 21, 2010, defendant filed a motion for reinstatement of appeal rights that was granted on September 29, 2010. This timely appeal follows.

Facts

On July 29, 2005, at approximately 5:45 a.m., Assistant Manager Jennifer Veazey arrived at New Orleans Hamburger and Seafood Company at 6920 Veterans Boulevard to open the restaurant for business. After Ms. Veazey parked her car and walked toward the restaurant, she was approached by an Airican-jAmerican4 male with a gun in his hand. He was wearing dark clothing, a hat, and gloves, and had something covering his face. The man told Ms. Veazey to unlock the doors, she complied, and they went inside the restaurant. As they entered the restaurant, Ms. Veazey silently triggered the restaurant’s security alarm using the panic button on a fob on her keychain.
*108 Next, the armed man instructed Ms. Veazey to go into the business’ office and open the safe. After she opened the safe, the man handed her a black bag, into which Ms. Veazey put some of the money from the safe. The man then directed Ms. Veazey to take a seat in a chair in the office. The man restrained her by taping her to the chair with duct tape that he was carrying with him. Finally, the man took the keys to Ms. Veazey’s car and left. Although Ms. Veazey could not fully free herself from her restraints, she eventually struggled to access her cell phone and dialed 911 to alert the Jefferson Parish Sheriffs Office to the robbery and her situation.
Deputy Stacie Poche Gurviche Taranto (hereinafter “Poche”) of the Jefferson Parish Sheriffs Office (JPSO) was the first responding officer. As Deputy Poche approached the New Orleans Hamburger and Seafood Company, she saw an African-American man walking from the front door to the only vehicle in the parking lot. He was wearing dark clothes, a dark hat, dark sunglasses, and tan gloves. Deputy Poche activated her lights and sirens then followed the vehicle onto Veterans Boulevard. When the stolen vehicle reached Downs Boulevard, the main entrance to Lafreniere Park, the fleeing driver turned right.
The absconding driver was traveling at a high rate of speed so he did not make the turn into the park and collided with the concrete median. The driver of the stolen vehicle stopped momentarily, put the vehicle into reverse, and backed into Deputy Poche’s police vehicle.
|5Next, the fleeing driver threw the car into gear, accelerated, turned right onto Madewood, and again stopped in the middle of the street. When Deputy Poche saw defendant’s reverse lights come on, she attempted to avoid a second collision but the fleeing driver backed into the deputy’s vehicle a second time.
Next, the escaping driver traveled up Madewood and turned right onto Oak Grove, which is a dead-end street. Again, the fleeing driver backed up, and again, rammed Deputy Poche’s vehicle.
At this point, the fleeing driver traveled onto David Drive, where he ran a red light and collided with a second police unit, which was driven by Deputy David Chaplain on his way to assist Deputy Poche. In this collision, the stolen vehicle struck the front of Deputy Chaplain’s car, nearly detaching the front bumper from the vehicle. The impact of the collision turned Deputy Chaplain’s car 180 degrees.
Afterward, the fleeing driver, who was traveling up to 90 miles per hour, hit gravel and rocks in a construction area on David Drive, which caused the stolen vehicle to fishtail and strike the concrete lane divider on David Drive. After this impact, the stolen vehicle became airborne, flipped several times, and, finally, collided with a tree. The armed robbery suspect immediately jumped out of the vehicle’s passenger-side window and ran between some houses on David Drive.
Deputy Chaplain chased the fleeing suspect, who hurdled several fences and ignored the deputy’s instruction to stop. When Deputy Chaplain caught up to the subject, Deputy Chaplain attempted unsuccessfully to subdue him using pepper spray.
Within a few moments, other officers arrived and, together, the officers attempted to handcuff the man. However, the suspect kicked, struck, and punched several of the officers to avoid being handcuffed. At that point, several officers ^deployed their tasers, which had no effect on the subject. Finally, five deputies physically restrained the subject so that another dep *109 uty could handcuff him. A short while later, Detective Craig Pond brought the victim, Ms. Veazey, to the apprehension location, where she positively identified defendant as the man that robbed her at gunpoint.
When defendant was apprehended near the backyard of 2004 David Drive, defendant was wearing a blue t-shirt around his neck. That t-shirt had holes cut for eyes like a mask. Defendant was also wearing jeans underneath his sweatpants. At that time, Deputy Stanley Brown removed a partial roll of duct tape, quarter wrappers, and $22.25 worth of quarters from the pocket of defendant’s pants. Detective Kevin Balser subsequently took defendant to the hospital for medical treatment, which is standard procedure if a subject is exposed to pepper spray.
After defendant was secured for transport, Deputy Brown searched the area around the site where defendant was apprehended. In the backyard area, Deputy Brown recovered a banded stack of one-dollar bills, totaling $50.00, on the ground next to a black bag. The black bag contained U.S. currency, two smaller bank bags, a pair of tan work gloves, and a pair of black, plastic-framed sunglasses. The currency that was loose in the black bag consisted of $245.00 in one-dollar bills, $20.50 in quarters, and $120.00 in rolls of quarters.
Further, the blue Whitney bag that was inside of the black bag contained $2.00 in one-dollar bills, $20.00 in five-dollar bills, $1,970.00 in ten-dollar bills, one quarter and 23 poker receipts. The yellow Pontchartrain State bank bag inside of the black bag contained U.S. currency consisting of $720.00 in twenty-dollar bills, $330.00 in ten-dollar bills, $550.00 in five-dollar bills, and $80.00 in one-dollar bills.
|7Next, Deputy Brown searched the stolen vehicle that defendant had been driving and recovered a loaded[3] Smith and Wesson .9 mm pistol from between the driver’s seat and the door of the vehicle. Deputy Brown also recovered a black cap, a quarter-roll wrapper, and loose change from inside the stolen vehicle that defendant was driving. At trial, the owner of the vehicle stated that neither the gun nor the currency were her property.
Defendant testified on his own behalf at trial. Defendant admitted that he had previously been convicted of first degree robbery and simple escape.
Defendant testified that he was an amateur boxer and he was jogging as part of his training on the morning in question. Defendant explained that, while he was jogging, he noticed a police chase, so he altered his usual jogging route. He was surprised when he was knocked to the ground by officers, handcuffed, and interrogated.
Defendant did identify blue jean shorts, a belt, and a pair of shoes from evidence as the clothes that he wore on the morning in question, but denied that the sweatpants were his. Defendant claimed that officers forcibly placed the sweatpants on him. He denied any involvement with the robbery of New Orleans Hamburger and Seafood or Ms. Veazey. After hearing all of the testimony and reviewing the evidence, the twelve-person jury found defendant guilty as charged.

Analysis

On appeal, defendant raises the same issue in his counseled and pro se assignments of error: the trial court committed *110 reversible error by requiring defendant to remain seated, shackled, and handcuffed throughout trial in the presence of the jury because such an extreme display of security robbed appellant of the presumption of innocence and the right to a fair trial.
|sThe State responds that defense counsel only objected to defendant being shackled and, therefore, defendant is precluded from raising on appeal the issue of him being handcuffed. It further responds that the trial judge was correct in shackling defendant based on the circumstances surrounding defendant’s arrest, defendant’s aggression during a pre-trial hearing, and his prior simple escape conviction. The State further asserts that the defendant cannot demonstrate prejudice because thé trial judge was careful to safeguard defendant’s constitutional rights even though he was shackled.
As the State correctly notes, defense counsel only objected to defendant being shackled; she did not object to him being handcuffed. Because a new basis for an objection may not be raised for the first time on appeal, our review will be limited to the issue of shackling. State v. Hidalgo, 95-319, p. 8 (La.App. 5 Cir. 1/17/96), 668 So.2d 1188, 1194-95.
Ordinarily, a defendant before the Court should not be shackled, handcuffed, or garbed in any manner destructive of the presumption of his innocence and of the dignity and impartiality of judicial proceedings. State v. Addison, 08-461, p. 23 (La.App. 5 Cir. 2/10/99), 8 So.3d 707, 721 (citing State v. Wilkerson, 403 So.2d 652, 659 (La.1981)). Exceptional circumstances, however, may require the trial court, within its discretion, to restrain a defendant for reasons of courtroom security or order or where the defendant’s past conduct reasonably justifies apprehension that he may attempt to escape. Id. In order for an appellate court to find reversible error, the record must show an abuse of the trial court’s discretion with respect to shackling that resulted in clear prejudice to the accused. Id., 08^61 at 23, 8 So.3d at 721-22.
On February 28, 2008, at the suppression hearing, the trial judge heard testimony from the victim and several officers regarding the armed robbery and the | nensuing chase and capture of defendant. The trial judge heard that defendant fled the robbery location in the victim’s vehicle. Further, while fleeing police at a speed of 90 miles per hour in a stolen vehicle, defendant struck one police unit three times, ran a red light, then struck a second police unit. Defendant only changed his method of escape from driving to running after he struck a concrete barrier in the stolen vehicle, which caused the vehicle to become airborne, flip several times, then collide with a tree.
The trial judge also heard a number of deputies testify that they attempted to subdue defendant with tasers and pepper spray to no avail. Lastly, the trial judge heard that defendant vigorously fought at least five male and female police officers, who had trouble subduing him enough to finally handcuff him. Deputy Brown of the JPSO testified that defendant’s struggle was “one of the most serious resisting arrests I’ve ever seen.”
At a lengthy pre-trial hearing on March 19, 2008, the trial judge discussed numerous matters with the prosecutor and defense counsel. At this hearing, the prosecutor reminded the trial judge that defendant forcibly escaped from custody while he was being housed outside of Jefferson Parish subsequent to Hurricane Katrina. He escaped to Tennessee where he remained for a period of time longer than one year.
*111 Further, during this hearing, defendant asked to address the court, which the trial judge informed defendant was defense counsel’s job. When the trial judge began speaking, defendant interrupted him. During this exchange, defendant told the trial judge, “Please, just hold on for a second while I rap on, Your Honor.”
Further, during the next exchange, on at least four occasions, defendant interrupted the trial judge. In response, the trial judge stated:
I’m trying to keep the atmosphere in here as light as I can because I don’t want things to escalate.
ImYou have challenged the system dramatically with the circumstances of your arrest as they were testified to by the arresting officers. As such, I’ve got real live security concerns with trying your case, okay.
Defendant continued to argue and interrupt, to which the trial judge replied,
Listen to me. I’m trying not to let you get yourself in deeper as far as the security that I’m going to require during the trial.
Okay, I’m going to have you shackled, you’re going to be sitting, you’ll be dressed in civilian clothes. I’m going to have you shackled and you’re going to sit at defense table, but you’ll be handcuffed and shackled, okay.
I’m trying not to also have you gagged, okay ... I’m trying. But, I’m telling you you’re pushing me and I’m trying to get you to stop.
I typically don’t shackle people if I can help it. It’s a sheriff decision, but I believe that people shouldn’t be shackled if I can help it, okay. I’m telling you you’ve already got me passed [sic] that.
I’m going to have you handcuffed, I typically don’t do that. I’m asking for it because I’m concerned from a security standpoint.
Now, the last step, I’m going to have you in here unless you just get so out of hand that I can’t do it and I’ve never, I’ve never, ever had that kind of trouble with anybody so I don’t anticipate it.
But, I’m telling you the next step is for me to have you gagged and I don’t want to do that.
At that hearing, defense counsel objected to the shackling of defendant.
In State ex rel. Miller v. Henderson, 329 So.2d 707 (La.1976), defendant challenged, on post-conviction, the fact that he was handcuffed and shackled during his second trial. The Louisiana Supreme Court found that the trial court did not abuse its discretion since its decision was based, in part, on the accused’s past escape record.
In State v. Colvin, 452 So.2d 1214 (La. App. 2 Cir.1984), writ denied, 457 So.2d 1199 (La.1984), defendant complained that prejudicial error occurred when his motion to have leg irons, handcuffs, and transport belt removed during trial was In denied. A deputy testified that Colvin had been restrained because of prior misbehavior in court and during transportation.
Our brethren on the Second Circuit found that the trial court was justified in refusing to allow removal of defendant’s restraints considering that defendant had attempted to escape twice and had made aggressive statements toward the judge in court at an earlier time and had to be forcibly removed from the courtroom. The Second Circuit noted that the restraints were handled in the least obtrusive manner possible, and the trial judge instructed the jury not to be prejudiced by the fact that defendant was shackled and handcuffed during trial. Id., 452 So.2d at 1219-20.
*112 In the instant case, we find that the trial judge did not abuse his discretion by shackling defendant. Here, testimony at pre-trial hearings and during trial revealed that defendant had little regard for the safety of the public, police officers, and himself during his high-speed flight from officers.
First, defendant presented extreme resistance to arrest through flight and fight. During his initial flight from arrest, he collided with at least two police cars while driving a stolen vehicle at high rates of speed.
Once his flight was stopped, he continued to fight. It took at least five officers working together to handcuff defendant at the time of arrest due to defendant’s size and strength. Further, neither tasers nor pepper spray were effective in subduing defendant.
Moreover, the trial judge specifically stated that he was concerned that defendant might lose his temper during trial and hurt his defense attorney. Taking into account all of the foregoing as well as defendant’s status as an amateur boxer, his aggressive and insistent manner in speaking to the trial judge at several pretrial hearings, and his prior conviction for simple escape, the record clearly supports the 112trial judge’s grave concern for the safety of the jury, the attorneys, the witnesses, and even the defendant, in his courtroom during trial.
Additionally, the trial judge took careful precautions throughout the four day trial to ensure that the jury did not see defendant in shackles. There is nothing in the record to show that the jury saw the restraints. Thus, defendant has not demonstrated that any prejudice resulted from his legs being shackled. State v. Washington, 430 So.2d 641 (La.1983). In light of the foregoing, we find no error in the trial judge’s decision to shackle the defendant.
Finally, defendant requests an error patent review, which is our routine procedure pursuant to La.C.Cr.P. art. 920. Our review reveals no errors patent that require corrective action.

AFFIRMED

. Defendant was also tried in a bench trial on six misdemeanor charges that arose out of the high-speed chase and subsequent capture of defendant immediately following the armed robbery. None of those convictions are the subject of this appeal.

. In his first appeal, defendant raised the same issue that he raises on appeal herein; specifically, that it was reversible error to require defendant to remain seated, shackled, and handcuffed through trial in the presence of the jury.

. According to Deputy Brown, the firearm contained 13 bullets in the magazine and one bullet in the chamber.