*887
 
 FREDERICKA HOMBERG WICKER, Judge.
 

 |2In this criminal matter, defendant Joseph Stokes appeals his convictions and sentences on one count of possession of heroin and one count of possession of cocaine. He contends that the trial court erred in denying his motion to suppress the evidence. For the reasons that follow, we affirm the judgment of the trial court and remand this matter with instructions.
 

 PROCEDURAL HISTORY
 

 On August 7, 2009, Joseph Stokes was charged by bill of information with one count of possession of heroin and one count of possession of cocaine, violations of La. R.S. 40:966(0 and La. R.S. 40:967(C) respectively. The defendant pleaded not guilty at arraignment. The defendant filed a motion to suppress evidence, which the trial court denied on December 3, 2009.
 

 This matter was set for trial on December 7, 2009. The record indicates that it was necessary to conduct the trial four days after the denial of the motion to 1 ¡¡suppress because one of the state’s witnesses was about to be deployed to Iraq. On December 7, the morning of the trial before trial commenced, counsel for the defendant made an oral motion to appoint a sanity commission to determine the defendant’s capacity to proceed to trial. The trial court entertained the motion that morning. At the conclusion of the hearing, the trial court denied the motion and ordered the parties to proceed to trial.
 

 Thereafter, the defendant withdrew his not guilty pleas and pleaded guilty as charged to both counts. The defendant reserved the right to challenge the trial court’s denial of the motion to suppress pursuant to
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976).
 

 The trial court sentenced the defendant to a term of imprisonment of ten years at hard labor on the possession of heroin charge. The trial court sentenced the defendant to a term of imprisonment of three years at hard labor on the possession of cocaine charge. The trial court additionally ordered that the sentences be served concurrently.
 

 That same day, the state filed a multiple offender bill of information alleging the defendant to be a third felony offender. After the trial judge advised the defendant of his habitual offender rights, the defendant admitted to the allegations in the habitual offender bill of information. The court accepted the stipulation, found that the defendant was a third felony offender, and vacated the 10-year sentence on the possession of heroin charge. The trial court imposed an enhanced 10-year sentence at hard labor without benefit of probation or suspension of sentence on the possession of heroin charge. The trial court also ordered the enhanced sentence to run concurrently with the sentence on the possession of cocaine charge as well as any other time the defendant was facing.
 

 J^PACTS
 

 The following facts were developed from the testimony presented at the hearing on the motion to suppress.
 

 Detective Paul Smith of the Jefferson Parish Sheriffs Office testified that he received a telephone call from a reliable confidential informant on July 10, 2009 indicating that a blue colored sports utility vehicle bearing license plate number RCB-217 would be traveling to a Days Inn in Harvey. The informant further indicated to Detective Smith that the Days Inn was located at 3750 West Bank Expressway and that the sports utility vehicle would arrive at the motel between the hours of 8:15 and 8:45 p.m. The confidential informant also told Detective Smith that one Joseph Stokes, an African-American male born on July 4,1965 (later identi-
 
 *888
 
 fíed as the defendant) would be seated in the sports utility vehicle’s passenger side and that he was traveling to the Days Inn to deliver a “quantity of narcotics.”
 

 Detective Smith testified that the confidential informant had provided him with information for more than ten years. Detective Smith testified that the confidential informant had previously provided him with information which led to several past arrests and convictions and that the informant had never failed him in any way in any past investigations.
 

 Detective Smith considered the information the informant provided in this instance to be credible. Detective Smith informed Sergeant Curtis Matthews of his discussion with the informant. Detective Smith and Sergeant Matthews decided to conduct surveillance of the Days Inn and proceeded to that location with two other police officers. Detective Smith testified that he drove an unmarked vehicle to the Days Inn.
 

 IsAt approximately 8:30 PM, Detective Smith observed a blue sports utility vehicle with license plate number RCB-217 enter the parking lot of the Days Inn. Detective Smith subsequently observed the defendant exit the front passenger door of the sports utility vehicle and walk in the direction of a stairwell. Detective Smith testified that he and Sergeant Matthews exited their police cruisers and began to approach the defendant. Detective Smith further testified that his firearm was not drawn, that he was dressed in plain clothes, and that his badge was clearly visible on his chest.
 

 Detective Smith testified that he and Sergeant Matthews yelled something to the effect of “Hey, what’s up” or “Hey, what’s going on” in the defendant’s direction. The defendant turned around, looked at Detective Smith and Sergeant Matthews, and dropped a paper bag that he had been carrying in his hand. Sergeant Matthews immediately detained the defendant. Detective Smith retrieved the paper bag that the defendant dropped while Sergeant Matthews detained the defendant.
 

 Detective Smith opened the bag. He observed two clear plastic bags each containing off-white rock-like objects and three silver foils containing a light brown substance. Detective Smith immediately field-tested the rock-like objects and the light brown substance. The rock-like objects field-tested positive for crack cocaine. The light brown substance field-tested positive for heroin. Detective Smith thereafter arrested the defendant and read the defendant his
 
 Miranda
 

 [1]
 

 rights.
 

 Sergeant Curtis Matthews testified at the hearing on the motion to suppress that he also observed the blue sports utility vehicle pull into the Days Inn at 3750 Westbank Expressway in Harvey. Sergeant Matthews recalled that the sports utility vehicle and Louisiana license plate matched the description of the vehicle Rgiven to him by Detective Smith. Sergeant Matthews also observed the defendant exit the vehicle from the front passenger side of the car. At the time, Sergeant Matthews’s vehicle was parked approximately 10 yards away from the defendant. Sergeant Matthews testified that after he and the other police officers exited their vehicles and began to walk in the direction of the defendant, the defendant “looked at us [then] turned and dropped the bag.” Sergeant Matthews recalled that his badge was visible at the time. Sergeant Matthews asked the defendant to place his hands on top of his police unit while Detective
 
 *889
 
 Smith retrieved the brown bag that the defendant had dropped.
 

 At the conclusion of the hearing, the trial court denied the motion to suppress.
 

 ASSIGNMENT OF ERROR
 

 The defendant contends that the trial court erred in denying his motion to suppress because Sergeant Matthews and Detective Smith did not have reasonable suspicion that he had committed or was about to commit a crime at the time they detained him. In response, the State argues the officers had at least reasonable suspicion to stop the defendant due to the information the confidential informant provided to Detective Smith. The state also argues that it is immaterial whether the officers had reasonable suspicion to stop the defendant because the defendant abandoned the narcotics prior to the occurrence of an actual or an imminent stop.
 

 The Fourth Amendment to the United States Constitution protects “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” U.S. Const, amend. IV. Similarly, the Louisiana Constitution provides that “[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy.” La. Const, art. 1, § 5. As a general |7rule, searches and seizures must be conducted pursuant to a validly executed search warrant or arrest warrant. Warrantless searches and seizures are considered to be per se unreasonable unless they can be justified by one of the Fourth Amendment’s warrant exceptions.
 
 See, e.g., State v. Freeman,
 
 97-1115 (La.App. 5 Cir. 12/29/98), 727 So.2d 630, 634.
 

 When an individual abandons property without any prior unlawful intrusion into the person’s right to be free from governmental interference, that property may be lawfully seized and used in a resulting prosecution.
 
 State v. Jackson,
 
 00-3083, (La.3/15/02), 824 So.2d 1124, 1126 (per curiam). An individual is not “seized” within the meaning of the Fourth Amendment until that individual either submits to a police show of authority or is physically contacted by police.
 
 California v. Hodari D.,
 
 499 U.S. 621, 625, 111 S.Ct. 1547, 1550-51, 113 L.Ed.2d 690 (1991).
 

 In
 
 State v. Tucker,
 
 626 So.2d 707 (La.1993), the Louisiana Supreme Court adopted the definition of an “actual stop” as outlined by the United States Supreme Court in
 
 Hodari D.
 
 However, the court noted that in
 
 State v. Belton,
 
 441 So.2d 1195, 1199 (La.1983), it determined that an individual is “seized” within the meaning of the Louisiana Constitution when the individual is either “actually stopped” or when an “actual stop” of the individual is “imminent.”
 

 The
 
 Tucker
 
 Court further explained, “[i]t is only when the police come upon an individual with such force that, regardless of the individual’s attempts to flee or elude the encounter, an actual stop of the individual is
 
 virtually certain,
 
 that an ‘actual stop’ of the individual is ‘imminent.’ ”
 
 Tucker,
 
 626 So.2d at 712 (emphasis in original). The Court stated that factors to consider in determining whether an actual stop is “imminent” include the following:
 

 (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) | ¿whether police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the num
 
 *890
 
 ber of police officers involved in the encounter.
 

 Id.
 
 at 712-713 (citations omitted).
 

 We review a trial court’s ruling on a motion to suppress under the manifest error standard.
 
 State v. Williams,
 
 08-272 (La.App. 5 Cir. 12/16/08), 3 So.3d 526, 530,
 
 writ denied,
 
 19 So.3d 470 (La.10/16/09).
 

 There are several reported Louisiana cases with facts similar to this case. In
 
 State v. Ellington,
 
 04-654 (La.App. 5 Cir. 11/30/04), 889 So.2d 1146, a reliable confidential informant informed Sergeant Todd Vignes of the Jefferson Parish Sheriffs Office that the defendant would be selling narcotics at Danny & Clyde’s Food Store on Manhattan Boulevard in Harvey. The confidential informant provided Sergeant Vignes with a description of the defendant’s vehicle and clothing.
 
 Id.
 
 at 1148.
 

 Sergeant Vignes ordered narcotics agents Richard Valley and Robert Blackwell to set up surveillance at Danny & Clyde’s and informed the agents of the information the confidential informant had provided to him. Immediately after arriving at Danny & Clyde’s, agents Valley and Blackwell observed the defendant inside the store.
 
 Id.
 
 Sergeant Vignes instructed the agents to approach the defendant and identify themselves as police officers. When agents Valley and Blackwell identified themselves as police officers, the defendant immediately dropped a clear plastic bag.
 
 Id.
 
 The bag contained four off-white rocks, which later field-tested positive for cocaine.
 
 Id.
 

 On appeal, the defendant contended that the cocaine he discarded should have been suppressed because it was the product of an unlawful investigatory stop. The defendant further contended that the officers unlawfully seized the plastic bag, |sas he discarded it after he was subjected to an actual stop.
 
 Id.
 
 at 1149. This Court disagreed, reasoning that:
 

 The officers’ actions did not constitute an actual or imminent stop. Only two officers approached defendant. There was no testimony to indicate that they had their guns drawn, or that they behaved in a threatening or forceful manner. The officers did not attempt any physical contact. When they approached defendant, the officers did not tell him they suspected him of possessing and/or selling narcotics. They simply identified themselves.
 

 Id.
 
 at 1150.
 

 We ultimately concluded that the “defendant, in this case, abandoned the plastic bag and its contents prior to any seizure of his person, the officers were entitled to seize the evidence.”
 
 Id.
 

 In
 
 State v. Jackson,
 
 00-3083 (La.3/15/02), 824 So.2d 1124, (per curiam), officers received information from a reliable confidential informant that an African-American man named “Derek” was selling cocaine in the 600 block of Sorapara Street in New Orleans.
 
 Id.
 
 at 1125. The informant additionally indicated that “Derek” would be wearing jeans and a striped shirt and was listening to a Walkman. Two police officers proceeded to the specified location and saw the defendant, who fit the informant’s description. The two officers observed the defendant “walk fast” to a neighboring house.
 
 Id.
 
 The officers stopped, got out of their vehicle, and positioned themselves at the fence in front of the property where they identified themselves as police officers. The defendant appeared startled, and “discreetly” dropped a packet containing nine rocks of cocaine to the ground.
 
 Id.
 
 The officers seized the packet and placed the defendant under arrest.
 

 The trial court denied the defendant’s motion to suppress the evidence. The defendant thereafter entered a conditional
 
 *891
 
 guilty plea to one count of possession of cocaine pursuant to
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976). On appeal, the hnFourth Circuit set aside the defendant’s conviction and sentence, finding that the officers observed no suspicious conduct from which they could conclude that the informant’s allegation of criminal activity was reliable.
 
 State v. Jackson,
 
 99-2993 (La.App. 4 Cir. 10/18/00), 772 So.2d 808, 811.
 

 However, the Louisiana Supreme Court reversed the Fourth Circuit. The Supreme Court reasoned that the officers did not “seize” the defendant by merely approaching him and identifying themselves as police. The court stated, in pertinent part:
 

 Because a police officer possesses the same right as any citizen to approach an individual and ask a few questions ... the police do not seize a person merely by standing approximately 10 feet away and identifying themselves without taking any additional measures to assert their authority over the person that he or she would not expect from the encounter if it had occurred with an ordinary citizen.
 

 State v. Jackson,
 
 824 So.2d at 1126 (citations omitted).
 

 Similarly, in this case, the officers’ actions did not constitute an actual or imminent stop. The testimony elicited at the motion to suppress indicates that approximately four police officers approached the defendant. There was no testimony to indicate that any of the four police officers had their guns drawn. Indeed, Detective Smith and Sergeant Matthews both testified that their guns were
 
 not
 
 drawn as they approached the defendant. As in
 
 State v. Ellington, supra,
 
 there was no testimony indicating that the officers behaved in a threatening or forceful manner and the officers did not attempt any physical contact. When Detective Smith and Sergeant Matthews approached the defendant, they did not tell him they suspected him of committing a crime. Detective Smith testified that he simply yelled something to the effect of “Hey, what’s up” or “Hey, what’s going on.” The defendant thereafter dropped a brown bag that contained rock-like objects which tested positive for cocaine and a brown powder that tested positive for heroin.
 

 In As there was no actual or imminent stop in this case, the discarded bag of narcotics was therefore abandoned at the time Detective Smith seized it. We need not reach the issues of reasonable suspicion and reliability of the confidential informant. The trial court was not manifestly erroneous in denying the defendant’s motion to suppress, thus, this specification of error is without merit.
 

 ERROR PATENT DISCUSSION
 

 In accordance with our usual procedure, we reviewed the record for errors patent. La.C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Wetland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). We note the following.
 

 Denial of Motion to Appoint a Sanity Commission
 

 First, we note that there is a potential error patent because the trial court denied the defendant’s oral motion to appoint a sanity commission without appointing a sanity commission.
 

 At the hearing on the defendant’s motion to appoint a sanity commission, counsel for the defendant indicated that he had not noted any potential issues with the defendant’s inability to understand the proceedings against him before that day. Counsel further indicated that “[t]his is, I guess, the first time that I’ve heard issues about his inability to understand the proceedings against him, and his inability to
 
 *892
 
 assist counsel today.” The prosecutor responded that the defendant had not produced any evidence indicating that he may be incompetent. The prosecutor noted that the defendant actively participated with defense counsel at the hearing on the motion to suppress, and that the defendant had filed pertinent motions in his defense.
 

 The trial court allowed defense counsel to engage in a colloquy with the defendant. The defendant indicated that he did not understand why he was there, that he did not understand the nature of the plea bargain the state offered him, that 112he had never been to trial before, and that he did not understand that he would be judged by a jury of his peers. The trial court thereafter noted that in a previous criminal proceeding against the defendant, defense counsel and the state had stipulated to the defendant’s competency to stand trial. The prosecutor additionally noted that the defendant has eleven previous convictions and that competency had been an issue in none of those previous convictions.
 

 The trial court then denied the defendant’s motion. The court noted that the defendant’s testimony was “self-serving” and that there was “absolutely no evidence of lack of competency.” The trial court additionally noted that the defendant participated in the hearing on the motion to suppress with defense counsel and that the defendant was aware of the fact that the trial had to be scheduled expeditiously due to the state’s witness being deployed to Iraq.
 

 According to La.C.Cr.P. art. 641, “[mjental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense.” A defendant’s mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court. La. C.Cr.P. art. 642. When the question of the defendant’s mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed.
 
 Id.
 
 The trial judge is only required to order a mental examination of the defendant when he has a reasonable ground to doubt the defendant’s mental capacity to proceed. La.C.Cr.P. art. 643;
 
 State v. Pugh,
 
 02-171 (La.App. 5 Cir. 10/16/02), 831 So.2d 341, 349.
 

 “Reasonable grounds to doubt the defendant’s mental capacity to proceed” refers to information which, objectively considered, should reasonably raise a doubt about the defendant’s competency and alert the court to the possibility that 113the defendant cannot understand the proceedings, appreciate the significance of the proceedings, or rationally aid his attorney in his defense.
 
 State v. Williams,
 
 02-1016 (La.App. 5 Cir. 2/25/03), 841 So.2d 936, 942,
 
 writ denied,
 
 882 So.2d 571 (La.8/20/04). The defendant bears the burden of establishing that he lacks the capacity to understand the object, nature and consequences of the proceedings against him and that he is unable, in a rational as well as factual manner, to consult with counsel in a meaningful way.
 
 State v. Hamilton,
 
 373 So.2d 179, 182 (La.1979).
 

 The ordering of a sanity commission rests in the sound discretion of the trial court.
 
 State v. Fish,
 
 99-1280 (La.App. 5 Cir. 4/12/00), 759 So.2d 937, 939. Furthermore, when the issue of a defendant’s incapacity to proceed is presented by “bare allegations without supporting evidence, the exercise of discretion conferred on the trial judge will not be disturbed.”
 
 State v. Wilkerson,
 
 403 So.2d 652, 658 (La.1981).
 

 
 *893
 
 In this case, we cannot say that the trial court abused her considerable discretion in denying the motion to appoint a sanity commission. The trial judge had observed the defendant at the hearing on the motion to suppress four days prior to denying the motion. The defendant actively participated at that hearing. The defendant was aware that the trial date was set to occur on December 7 because the state’s witness was being deployed to Iraq shortly thereafter. Thus, it was in the defendant’s best interest to attempt to delay the proceedings. In addition, as the prosecutor noted at the hearing on the motion to appoint a sanity commission, the defendant is no stranger to the criminal justice system. He has been convicted of numerous offenses and not once been adjudged incompetent.
 

 We find that there was no prejudice to the defendant and his substantial rights were not affected.
 

 |
 
 uOther Errors Patent
 

 The trial court failed to properly inform the defendant of the proper two-year prescriptive period for applying for post-conviction relief pursuant to La. C.Cr.P. art 930.8. During the sentencing colloquy, the trial judge advised the defendant that he had two years “from today’s date to seek post-conviction relief.” The commitment/minute entry reflects that the trial court correctly advised the defendant that he had two years from the date his judgment of conviction and sentence became final to seek post-conviction relief. If there is a discrepancy between a minute entry and the transcript, the transcript prevails.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983).
 

 The failure to advise a defendant that “the prescriptive period runs from the time his
 
 conviction and sentence
 
 become final” is an incomplete advisory.
 
 State v. Grant,
 
 04-341 (La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598 (emphasis in original). La.C.Cr.P. art. 930.8 provides that no application for post-conviction relief, including an application that seeks an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.C.Cr.P. arts. 914 or 922.
 

 Accordingly, we advise the defendant, by this opinion, that pursuant to La.C.Cr.P. art. 930.8, no application for post-conviction relief, including applications that seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.C.Cr.P. arts. 914 and 922.
 
 State v. Davenport,
 
 08-463 (LaApp. 5 Cir. 11/25/08), 2 So.3d 445, 451,
 
 writ denied,
 
 2009-158 (La.10/16/09), 19 So.3d 473.
 

 The transcript also indicates that the trial judge sentenced the defendant on the possession of cocaine charge to a term of imprisonment of three years at hard | i.fiabor; however, the commitment/minute entry reflects that the trial judge sentenced the defendant to a term of imprisonment of five years at hard labor on that charge. The transcript prevails.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983). Accordingly, we remand this matter to the trial court. The trial court is instructed to correct the commitment/minute entry form to conform to the transcript.
 

 The transcript further indicates that the trial court ordered the original sentences on the possession of heroin charge and the possession of cocaine charge to run concurrently with each other and “with any other time you are currently serving.” However, the commitment indicates that the trial court ordered the original sentences to run concurrently “with any other sentence presently serving and parole violation sen
 
 *894
 
 tence.” On remand, the trial court is instructed to correct the commitment/minute entry form to conform to the transcript.
 

 The transcript further indicates that the trial judge ordered the enhanced sentence on the possession of heroin charge to be served concurrently with the sentence on the possession of cocaine charge “as well as any time that you are currently serving.” However, the commitment reflects that the trial judge ordered the enhanced sentence on the possession of heroin charge to be served concurrently with the sentence on the possession of cocaine charge “any other sentence presently serving and parole violation sentence.” On remand, the trial court is instructed to correct the commitment/minute entry form to conform to the transcript.
 

 Accordingly, we will remand this matter to the trial court for correction of the commitment/minute entry. The trial court is instructed to correct the commitment/minute entry to conform to the transcript. In addition, the Clerk of Court for the 24th Judicial District Court is directed to transmit the original of the 11ficommitment/minute entry to the officer in charge of the institution to which the defendant has been sentenced pursuant to La.C.Cr.P. art. 892(B)(2).
 

 CONCLUSION AND DECREE
 

 For the foregoing reasons, the defendant’s convictions are affirmed. This matter is remanded for correction of commitment/minute entry in accordance with the above instructions.
 

 AFFIRMED; REMANDED WITH INSTRUCTIONS.
 

 [1]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).