JUDE G. GRAVOIS, Judge.
Defendant, Alvin Elzy, appeals his conviction of failing to maintain registration as a sex offender. On appeal, defendant argues that the trial court erred in permitting him to represent himself at trial. He also argues that the trial court erred in proceeding to trial without first determining his mental competency to proceed. After thorough review of the record, for the following reasons, we affirm defendant’s conviction and sentence.

PROCEDURAL HISTORY

On February 24, 2011, the Jefferson Parish District Attorney filed a bill of information charging defendant, Alvin Elzy, with failing to maintain registration as a sex offender by failing to fulfill his community notification requirements, in violation of LSA-R.S. 15:542. Defendant was arraigned the next day and pled not guilty. On July 20, 2011, the case was tried before a twelve-person jury that unanimously found defendant guilty as charged. Defendant filed a pro se motion for post-verdict judgment of acquittal that was denied on August 29, 2011. Also on that date, the trial judge construed defendant’s other pro se motions as a motion for a new trial, which was denied as well.
On August 31, 2011, the trial judge sentenced defendant to imprisonment at hard labor for five years, without the benefit of parole, probation, or suspension of sentence. On that same date, defendant orally noticed his intent to appeal. Defendant filed a pro se motion for a new trial on September 8, 2011, that was declared moot, since the allegations contained therein were the same as those contained in the previous motion for a new trial. On September 9, 2011, defendant filed a pro se “Motion to Correct and Reconsider an Illegally Imposed Sentence” that was denied. Defendant filed additional pro se pleadings on September 12, 2011, which the trial judge construed and granted as a motion for appeal on September 26, 2011.

FACTS

Clariee Gervais, a clerk with the Jefferson Parish Sheriffs Office (“JPSO”), testified that she came into contact with defendant on October 22, 2010 when he came to her office to register as a sex offender. Ms. Gervais explained that when she first started the registration process with defendant, he was uncooperative and did not want to answer her questions. Additionally, Ms. Gervais stated that defendant was mumbling — she could not understand what he was saying. At that point, Ms. Gervais turned the matter over to her co-worker, Jennifer Propps.
Ms. Propps testified that she took information from defendant and prepared a seven-page Sex Offender Registration Form for his case. She then verbally reviewed the form with defendant and gave *60 it to him to review. Defendant subsequently initialed the bottom of each page of the form and signed the ^certification at the end.[1] This document stated that defendant had been convicted of aggravated rape. But, when Ms. Propps later requested and received a certified copy of defendant’s conviction record from Orleans Parish, it reflected that he had actually been convicted of attempted aggravated rape. At that time, Ms. Propps corrected defendant’s conviction information in the registration form in her computer.
While defendant was in her office, Ms. Propps informed him that he had to do several things in order to complete the registration requirements. She gave defendant a so-called “21-day letter,” which told him everything he had to do within twenty-one days of his coming to her office to register, including providing notice to The Times-Picayune (a local newspaper), and to landlords, and obtaining a Louisiana ID card identifying him as a sex offender. This letter specifically notified defendant that he was required to return with the requested information by November 24, 2010, and that “non-compliance will result in a warrant for your arrest.” After Ms. Propps went through these forms with defendant, he signed them and was given copies of everything he had signed.
Ms. Propps testified that she did not think that defendant had any questions regarding the requirements or accuracy of the information on the form. She explained that if defendant had told her that he had been convicted of attempted aggravated rape rather than aggravated rape, she would have changed that information on the form. Ms. Propps further explained that when a person comes in to register, he is given an opportunity to correct the paperwork, and that when he initials the paperwork, he is saying that all of the information set forth therein is correct.
Ms. Propps testified that after defendant left her office that day, he never returned. She tried contacting him by calling and leaving a message for him with his niece, but he never returned to her office. She asserted that although defendant was convicted of attempted aggravated rape rather than aggravated rape, the registration requirements for both of these crimes were the same. She noted that defendant never returned and told her he did not do what he was supposed to do because his conviction as stated in the paperwork was incorrect. Ms. Propps stated that both crimes required a lifetime registration as a sex offender.
JPSO Lieutenant Luis Munguia, who was qualified as an expert in the field of latent fingerprint identification, testified that State’s Exhibit 5 was the fingerprint card of defendant while he was at the Department of Corrections, and that State’s Exhibit 6 was the fingerprint card from when defendant was arrested and charged with attempted aggravated rape. Lieutenant Munguia further testified that he compared State’s Exhibits 5 and 6 to each other and found that the fingerprints on the two cards were from the same individual. He identified defendant as being the same person who was convicted of attempted aggravated rape and who was now charged with the crime of failing to register as a sex offender.
Lieutenant Munguia asserted that he obtained a warrant for defendant’s arrest because defendant failed to complete the *61 sex offender registration requirements. He explained that his office usually gives people more than twenty-one days to comply with the sex offender registration requirements. They also try to call them. If there is no response, then an arrest warrant is obtained. Lieutenant Munguia testified that defendant never gave justification for his failure to register, and that the slight error in the paperwork as to the crime he committed would not justify defendant’s failure to register.
ASSIGNMENT OF ERROR NUMBER ONE — self representation
On appeal, defendant first argues that the trial judge erred by allowing him to represent himself. He contends that the trial judge failed to conduct a reasonable inquiry to establish on the record a knowing and intelligent waiver of the right to counsel under the circumstances. Appellate counsel claims that at no time did defendant demonstrate understanding, comprehension, or knowledge, and that red flags should have been raised based on defendant’s self-reported history of a skull fracture, blackouts, and difficulty communicating. He also asserts that despite the trial judge’s best efforts, the trial judge failed to adequately advise defendant of the nature of the charges, the penalty range for the charges, and the dangers and disadvantages of self-representation.
The State responds that the trial judge did not err by allowing defendant to represent himself, noting that multiple colloquies with defendant established that he was well informed as to his rights and the dangers and consequences of self-representation, and that he knowingly and intelligently waived his right to counsel. The State further responds that the trial judge had ample opportunity to evaluate defendant’s ability to understand and waive his right to counsel based on first-hand interactions and observations of defendant and consideration of his multiple pro se filings.
The Sixth Amendment to the United States Constitution and Article I, § 18 of the Louisiana Constitution give a defendant the right to counsel as well as the right to defend himself. A defendant may represent himself only if he makes an unequivocal request to represent himself and knowingly and intelligently waives his right to counsel. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); State v. Bridgewater, 00-1529, pp. 17-18 (La.1/15/02), 823 So.2d 877, 894, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003); State v. Bruce, 03-918, p. 4 (La.App. 5 Cir. 12/30/03), 864 So.2d 854, 857. Assertion of that right “must also be clear and unequivocal.” State v. Bell, 09-199, p. 17 (La.11/30/10), 53 So.3d 437, 448, cert. denied, — U.S. -, 131 S.Ct. 3035, 180 L.Ed.2d 856 (2011).
In accepting a waiver of counsel, the trial court should advise the defendant of the nature of the charges, the penalty range for the charges, and the dangers and disadvantages of self-representation, such as the failure to recognize objections to inadmissible evidence and the inability to adhere to technical rules governing trials. State v. Bruce, supra. In addition, the court should inquire into the defendant’s age, education and mental condition, and should determine according to the totality of circumstances whether the accused understands the significance of the waiver. Id.
Once the defendant has made an unequivocal request to represent himself, the trial court must determine whether the defendant is competent to waive counsel and is “voluntarily exercising informed free will.” State v. Santos, 99-1897, p. 3 (La.9/15/00), 770 So.2d 319, 321. The competency at issue is a defendant’s compe *62 tence to waive his right to counsel and not his competence to represent himself. Id.
Whether a defendant has knowingly, intelligently, and unequivocally asserted the right to self-representation must be determined on a case-by-case basis, considering the facts and circumstances of each case. State v. Leger, 05-11, p. 53 (La.7/10/06), 936 So.2d 108, 147-48, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007). The question of whether a defendant properly waived his or her right to counsel should not be judged on what happened subsequent to the waiver of counsel; rather, it is the record made in waiving the right to counsel that is determinative of whether this right was properly waived. State v. George, 98-1149, p. 8 (La.App. 5 Cir. 3/30/99), 743 So.2d 685, 689.
The trial court is given much discretion in determining whether the defendant’s waiver was knowing and intelligent. State v. LaGarde, 07-288, p. 12 (La.App. 5 Cir. 10/30/07), 970 So.2d 1111, 1120. An appellate court should not reverse the trial court ruling absent an abuse of its discretion. Id.
On February 25, 2011, at his arraignment, defendant said he wanted to represent himself. On March 21, 2011, defendant orally moved to represent himself depending on which attorney the court intended to appoint to represent him. The trial judge advised defendant that he did not get to pick who his appointed counsel would be, and then asked defendant if he wanted to represent himself immediately, and defendant answered affirmatively. The trial judge subsequently swore defendant in, after which defendant testified that he was fifty-two years old, had a fifth grade education, had received a “Certificate of Completion” from “tutor school,” had been in and out of prison for thirty-four years, had been employed in various jobs, and knew how to read and write.
The trial judge told defendant that self-representation was almost always unwise, that it might be detrimental to his case, and that she strongly recommended against it. Defendant replied that when he started in the system, he took the advice of an appointed lawyer, which “messed up” his life. He thought he could do better speaking on his own behalf, noting that he had studied law while he was incarcerated. The trial judge told defendant to consider that lawyers, including the prosecutor, were highly educated and familiar with the court system and rules. Defendant said he thought he could present his case better than a lawyer. The trial judge informed defendant that he would receive no special treatment, and that he would be held to the same rules of procedure and evidence. Defendant said he understood.
The trial judge told defendant he would have no staff of investigators to assist him, as the district attorney would have. Defendant stated that he had given the matter a lot of thought since his arrest, and that he was positive he had made up his mind to represent himself. However, defendant admitted he did not understand the charges against him and had not been provided with a copy of the bill of information filed against him. After a lengthy discussion, the trial judge allowed defendant to represent himself for the sole purpose of receiving discovery from the State. The trial judge then said that she was going to allow defendant time to review the discovery, and she appointed an Indigent Defender Board (“IDB”) attorney to represent defendant in the meantime. She stated that defendant’s motion to represent himself would be revisited on April 18, 2011.
*63 On April 28, 2011, the trial judge heard and denied defendant’s pro se motion to quash that defendant argued himself. On May 23, 2011, the trial judge again considered defendant’s motion to represent himself. The trial judge told defendant that she needed to know whether he wanted to continue representing himself or whether he wanted the IDB attorney, Frazilia Wiggins, to represent him. Defendant said he wanted to represent himself. The trial judge then engaged in another lengthy colloquy with defendant about his background.
During that colloquy, defendant said he had represented himself before in a civil matter. He stated that he did not “pursue it” because he was in the hospital having skull surgery, which he claimed caused blackouts. The trial judge again advised defendant of the disadvantages of self-representation. Defendant indicated that he understood he was charged with failing to maintain registration as a sex offender by failing to fulfill his community notification requirements. He repeated |inthat he wanted to represent himself, but was willing to accept Ms. Wiggins as standby counsel. The trial judge said that she would take the matter under advisement.
On May 24, 2011, the trial judge stated that she had given the matter a lot of thought and ruled that defendant had every right under the Constitution to represent himself. However, the trial judge ordered that Ms. Wiggins remain on as “shadow counsel” for assistance, and defendant agreed. The trial judge said that her ruling did not mean it was the right decision, and she said she had concerns about defendant’s ability to represent himself, but she was going to allow him to do so nonetheless. The trial judge again advised defendant that he would have to follow all of the rules of evidence and procedure, and defendant said he understood. Afterwards, defendant argued several pro se motions he had filed, and a preliminary examination/probable cause hearing was held. Defendant filed his witness list, and a trial date was set.
On July 20, 2011, defendant said he was ready for trial. The trial judge stated that even though she thought it was not in defendant’s best interest for him to represent himself, she asked him if he still desired to waive his right to counsel and represent himself, and he answered “correct.” The trial judge then stated that based upon previous court appearances and conversations that she had had with defendant, he had freely and voluntarily waived his right to counsel.
The case was subsequently pre-tried with defendant, at which time the prosecutor stated that defendant had prior convictions for attempted aggravated rape and aggravated battery. The prosecutor then gave the basis for the present charge of failure to register as a sex offender and the penalty range if defendant was convicted as charged. The prosecutor also offered to amend the charge to attempted failure to register as a sex offender and gave the sentencing range ifj^defendant was convicted on the amended charge. Additionally, the prosecutor advised that if defendant accepted the plea offer, the State would not file a multiple bill against him. Defendant said he was not interested in the offer, and the matter proceeded to trial.
After thorough consideration of the record, we find that the trial judge did not abuse her discretion by allowing defendant to represent himself with the assistance of counsel.[2] During the hearings *64 and various colloquies detailed above, the trial judge determined that defendant was fifty-two years old, had a fifth grade education and additional schooling, and had significant history in the criminal justice system. The trial judge also ascertained that defendant knew the nature of the charge against him. The prosecutor advised defendant of the sentencing range for the charge, although it was immediately after the trial judge found that defendant had freely and voluntarily waived his right to counsel. The trial judge advised defendant of the dangers and disadvantages of self-representation, and defendant indicated he understood them. Additionally, defendant clearly and unequivocally stated that he wanted to represent himself.
In light of the foregoing, under the totality of the circumstances, including the trial judge’s lengthy interaction with defendant during the pre-trial hearings, we find that defendant’s waiver of right to counsel was knowingly, intelligently, and voluntarily made, and the assertion of the right to represent himself was clear and | ^unequivocal. Accordingly, we find no error in the trial court’s ruling on this issue. This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER TWO — mental capacity to proceed
Defendant also argues that in light of his self-reported skull surgeries, blackouts, and difficulty communicating, along with the colloquy indicating his inability to understand the charge against him, the trial judge erred by failing to order a mental examination to determine if defendant possessed the appropriate mental capacity to proceed to trial. The State responds that the trial judge did not abuse her discretion in failing to order a competency evaluation, since there was no supporting evidence as to defendant’s medical claims, and defendant did not file a motion to appoint a sanity commission. Further, the State argues that the trial judge was in the best position to evaluate defendant’s mental competency, based on her significant interaction with defendant throughout the proceedings.
According to LSA-C.Cr.P. art. 641, “[mjental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense.” A defendant’s mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court. LSA-C.Cr.P. art. 642. When the question of the defendant’s mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed. Id.
The trial judge is only required to order a mental examination of the defendant when he has a reasonable ground to doubt the defendant’s mental capacity to *65 proceed. LSA-C.Cr.P. art. 643; State v. Pugh, 02-171, p. 18 (La.App. 5 Cir. 10/16/02), 831 So.2d 341, 349. “Reasonable grounds to doubt the | ^defendant’s mental capacity to proceed” refers to information which, objectively considered, should reasonably raise a doubt about the defendant’s competency and alert the court to the possibility that the defendant cannot understand the proceedings, appreciate the significance of the proceedings, or rationally aid his attorney in his defense. State v. Williams, 02-1016, p. 9 (La.App. 5 Cir. 2/25/03), 841 So.2d 936, 942, writ denied, (La.8/20/04), 882 So.2d 571.
The ordering of a sanity commission rests in the sound discretion of the trial court. State v. Fish, 99-1280, p. 4 (La.App. 5 Cir. 4/12/00), 759 So.2d 937, 939. Furthermore, when the issue of a defendant’s incapacity to proceed is presented by “bare allegations without supporting evidence, the exercise of discretion conferred on the trial judge will not be disturbed.” State v. Stokes, 10-171, p. 12 (La.App. 5 Cir. 10/12/10), 50 So.3d 884, 892 (citing State v. Wilkerson, 403 So.2d 652, 658 (La.1981)).
In the instant case, we find that the trial judge did not abuse her discretion by not ordering a mental examination of defendant, even though she had the authority to do so under LSA-C.Cr.P. art. 642. The trial judge had ample opportunity to consider defendant’s mental capacity based on her lengthy interactions with him during his numerous appearances in court. Defendant appeared in court for arraignment on February 25, 2011, and for the hearings on his motion to represent himself on March 21 and April 28, 2011. On May 24, 2011, defendant argued several pro se motions that he had filed, and a preliminary examination/probable cause hearing was held. Defendant also pre-tried his case and turned down a plea offer from the State on July 20, 2011.
The transcripts of those proceedings do not reflect that the trial judge had reasonable grounds to doubt defendant’s mental capacity to proceed. There was no evidence to alert the court to the possibility that defendant could not understand the 11,proceedings, appreciate the significance of the proceedings, or defend himself. Though at the initial colloquy defendant indicated that he did not understand the charges brought against him, he said it was because he had not seen a copy of the bill of information filed against him. Defendant was thereafter supplied with discovery from the District Attorney’s Office that included the bill of information filed against him. Defendant thereafter acknowledged, during a later colloquy with the judge, that he understood the charges. Additionally, although defendant may have been inarticulate at times during his court appearances, there was no medical evidence presented to support his contentions that he had undergone skull surgeries or had resulting symptoms from those surgeries. This assignment of error is without merit.

ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990). A review of the record reveals no errors patent requiring correction.

CONCLUSION

For the reasons stated above, defendant’s conviction and sentence are affirmed.

AFFIRMED

. In the certification, defendant acknowledges that "I have fully disclosed all pertinent information,” and that "the above requirements have been fully explained to me, that I have received a copy of the above notice of offender registration and notification requirements and a copy of the statutes providing for such requirements.”

. " 'Hybrid' representation allows a defendant the right to defend himself as co-counsel *64 while standby counsel explains and enforces the basic courtroom rules, as long as standby counsel's participation does not seriously undermine the defendant’s appearance as representing himself before the jury.” State v. Berry, 08-151, p. 14 (La.App. 5 Cir. 6/19/08), 989 So.2d 120, 129, writ denied, 08-1660 (La.4/3/09), 6 So.3d 767 (citing State v. Brown, 03-897 (La.4/12/05), 907 So.2d 1, 22, cert. denied, 547 U.S. 1022, 126 S.Ct. 1569, 164 L.Ed.2d 305 (2006)). When an attorney partially represents a defendant who assumes functions that are at the core of an attorney's traditional role, the defendant must still knowingly and intelligently waive his constitutional right to have his lawyer perform the core functions, in order to show that the defendant appreciates the possible consequences of mishandling the core functions that lawyers are more competent to perform. State v. Mathieu, 06-946, p. 11 (La.App. 5 Cir. 5/29/07), 960 So.2d 296, 303, writ denied, 07-1424 (La.2/1/08), 976 So.2d 714.